[Civ. No. 31292.   Second Dist., Div. One.   Aug. 26, 1968.]

WILLIAM MORRIS ARENSTEIN et al., Plaintiffs and Appellants, v. CALIFORNIA STATE BOARD OF PHARMACY, Defendant and Respondent.

Dean M. McCann for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, and Lynn Henry Johnson, Deputy Attorney General, for Defendant and Respondent.

LILLIE, J.—State Board of Pharmacy filed an administrative accusation charging Arenstein and Ursem each with refilling a prescription for a dangerous drug without authorization of the prescriber (§ 4229, Bus. & Prof. Code), and that the corporation was subject to discipline because of their acts (§ 4357, Bus. & Prof. Code).[1] The board adopted the hearing officer's proposed decision holding the three licensees to be subject to discipline and recommending suspension of the pharmacy permit of the corporation be suspended for 30 days (reduced to 5 days by the board) and the professional licenses of Aresnstein and Ursem for 15. A request for reconsideration having been denied, licensees filed petition for writ of mandate in the superior court. From the bench Judge Nutter orally indicated he was ruling in favor of licensees but later held in favor of the board, filed his findings and entered judgment denying the peremptory writ; subsequently he granted a

---

[1]Section 4357, Business and Professions Code: ''The violation or attempting to violate, directly or indirectly, or assisting in or abetting the violation of or conspiring to violate any provisions or terms of this chapter, or of any laws governing pharmacy, or of the rules and regulations promulgated by the board, shall constitute grounds for the suspension or revocation of any certificate, license or permit issued by the board.''

motion for new trial. At the conclusion of the second trial, Judge Tante granted the petition but later, on his own motion, placed the matter on calendar and after further hearing reversed his decision, vacated the previous order, denied the petition and discharged the alternative writ. Findings of Fact and Conclusions of Law were filed and judgment was entered denying the peremptory writ of mandate. From this judgment all licensees appeal.

On the evidence contained in the administrative record the superior court held that the "weight of the evidence" supports the findings of the board that Arenstein, president of, and while on duty as a pharamcist at North Palos Drug Corporation, a retail pharmacy, and Mrs. Ursem, an employee of, and while on duty as a pharmacist at said corporation refilled prescriptions (Nos. 39213 and 39023) for Dexedrine and Equanil for Chaffee and Leland on June 4, 1963, and July 12, 1963, respectively, without authorization of the prescribing doctor, and that Dexedrine and Equanil are dangerous drugs; and found "as facts the matters related in the Board's findings of fact." ■ The superior court having undertaken an independent review of the evidence, our function on appellate review is solely to decide whether credible, competent evidence supports that court's judgment. (*Yakov* v. *Board of Medical Examiners,* 68 Cal.2d 67, 70 [64 Cal.Rptr. 785, 435 P.2d 553].)

Certified copy of federal information, pleas of guilty and other proceedings in the United States District Court (Exh. 2) establish that previously Arenstein had pleaded guilty to count I of an information alleging that prior to June 4, 1963, Dexedrine tablets, a drug within the meaning of 21 U.S.C. 353(b) (1) (B),[2] were shipped in interstate commerce into California in a bottle labeled "CAUTION—Federal law prohibits dispensing without prescription"; that on June 4, 1963, while the tablets were being held for sale at the premises

---

[2]Section 353, Title 21 US.C.: "(b)(1) A drug intended for use by man which—

"

"(B) because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to administer such drug; or

"

"(4) A drug which is subject to paragraph (1) of this subsection shall be deemed to be misbranded if at any time prior to dispensing its label fails to bear the statement 'Caution: Federal law prohibits dispensing without prescription'. . . ."

of North Palos Drug Corporation, said corporation and Arenstein, its president, dispensed said Dexedrine tablets to William M. Chaffee, upon his request for refill of a prescription (No. 39213) without obtaining authorization of the prescriber, in a vial displaying the label

"NORTH PALOS DRUG CORP.
26636 So. Western Ave., Lomita, Calif.
RX No. 39213
ONE IN MORNING        5-16-63 Wa";

and that the act of dispensing said drug as aforesaid is contrary to section 353(b)(1) which resulted in said vial being misbranded in violation of 21 U.S.C. 331(k).[3] Exhibit 2 also shows that Ursem pleaded guilty to count VIII charging a similar violation on July 12, 1963, by dispensing Equanil, a drug within the meaning of 21 U.S.C. 353(b)(1) (C),[4] to John S. Leland without obtaining authorization of the prescriber. Ursem and Arenstein each was placed on probation for four years and the corporation was fined $900. The hearing officer took official notice of Dexedrine and Equanil as dangerous drugs within the meaning of section 4211, Business and Professions Code.

In their testimony before the hearing officer Arenstein and Ursem repudiated their pleas of guilty testifying they were innocent of the criminal charges, did not consider themselves guilty and had never refilled a prescription for a dangerous drug without authorization of the prescribing doctor. Arenstein further testified that he refilled the prescription for

---

[3]Section 331(k), 21 U.S.C. provides: "The alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling of, or the doing of any other act with respect to, a food, drug, device, or cosmetic, if such act is done while such article is held for sale (whether or not the first sale) after shipment in interstate commerce and results in such article being adulterated or misbranded."

[4]Section 353(b)(1)(C) provides for a drug which "is limited by an approved application under section 355 of this title to use under the professional supervision of a practitioner licensed by law to administer such drug,
shall be dispensed only (i) upon a written prescription of a practitioner licensed by law to administer such drug, or (ii) upon an oral prescription of such practitioner which is reduced promptly to writing and filed by the pharmacist, or (iii) by refilling any such written or oral prescription if such refilling is authorized by the prescriber either in the original prescription or by oral order which is reduced promptly to writing and filed by the pharmacist. The act of dispensing a drug contrary to the provisions of this paragraph shall be deemed to be an act which results in the drug being misbranded while held for sale."

Chaffee but only after calling Dr. Delaplaine for authority; Mrs. Ursem claimed she refilled the prescription for Leland but only after calling Dr. Groveman's office and obtaining authorization therefor. None of the following was called as a witness—Dr. Delaplaine, Dr. Groveman, William M. Chaffee or John S. Leland. As to why they pleaded guilty each said he did so on the advice of counsel as a result of which other counts against them in the information were dismissed. However, Exhibit 2 establishes that before their pleas of guilty were accepted by the United States District Court, Arenstein and Ursem each filed therein Petition To Enter Plea Of Guilty (Fed. Rules Crim. Proc., rules 10 and 11) wherein each separately declared and represented to the court that he had read the accusations, discussed them with his counsel and understood the same, that he told the facts and circumstances concerning the matters in the information to his counsel who advised him as to the nature of the accusations against him, any possible defenses he might have thereto and the punishment therefor provided by law, that he understood the proceedings against him, and that he "know[s] the court will not accept a plea of 'GUILTY' from any one who claims to be innocent, with that in mind and because I make no claim of innocence, I wish to plead 'GUILTY'." Appellants' attorney also filed for each, Certificate of Counsel declaring that the pleas of guilty were voluntarily and understandingly made by them and recommending to the court that they be accepted and entered on behalf of his clients.

Appellants raise the following issues—the ruling of Judge Nutter that the motion for new trial was granted "on the grounds of insufficiency of the evidence and judgment as against the law" was binding on Judge Tante in the second trial; twice Judge Nutter and once Judge Tante found the evidence to be insufficient to support the board's decision, thus, the latter erred in denying the writ; their pleas of guilty in the federal court were not admissions of violations of section 4229, Business and Professions Code, but even so, they should have been given no weight; there is no evidence of a corporate violation; there is no evidence that Dexedrine and Equanil are dangerous drugs within the meaning of section 4211, Business and Professions Code; and section 4211 is unconstitutional.

■ "That the trial court in this case was 'authorized by law to exercise its independent judgment on the evidence' is well established. [Citations.] . . . 'Thus, the ultimate power

of decision rests with the trial court.' " (*Moran* v. *Board of Medical Examiners*, 32 Cal.2d 301, 308 [196 P.2d 20] ; *Yakov* v. *Board of Medical Examiners*, 68 Cal.2d 67, 71 [64 Cal.Rptr. 785, 435 P.2d 553].) As to appellate review, the court in *Yakov* v. *Board of Medical Examiners*, 68 Cal.2d 67, said at page 72 [64 Cal.Rptr. 785, 435 P.2d 553] : "As we stated in *Moran, supra*, 32 Cal.2d 301, 308, quoting from *Crawford* v. *Southern Pac. Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183] : ' " ' "In reviewing the evidence . . . all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. . . . When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.' " ' 'The rule quoted is as applicable in reviewing the findings of a judge as it is when considering a jury's verdict.' (*Estate of Bristol* (1943) 23 Cal.2d 221, 223 [143 P.2d 689] ; *Moran* v. *Board of Medical Examiners, supra*, 32 Cal.2d 301, 308.) " Thus, pursuant to *Moran* and *Yakov* the question before this court turns upon whether the evidence reveals substantial support, contradicted or uncontradicted, for the trial court's decision that the weight of the evidence shows appellants violated section 4229, Business and Professions Code.

■ The ruling of Judge Nutter granting the motion for new trial on specified "grounds of insufficiency of the evidence and judgment as against the law" (see § 657, subd. 6, Code Civ. Proc.) was not binding on Judge Tante and did not preclude a subsequent retrial and re-examination of all issues of fact, even though no additional evidence was offered.[5] The motion was granted for the sole purpose of according appellants a new trial which consists of "a re-examination of [all] issues[s] of fact in the same court. . . ." (§ 656, Code Civ. Proc.) ; and a re-examination of all issues contemplates an independent determination of the cause. However, the record shows that the motion was granted by Judge Nutter primarily because of his doubt that he had properly decided the legal

[5]As in *Moran* v. *Board of Medical Examiners*, 32 Cal.2d 301 [196 P.2d 20], the only evidence before the superior court was the record of the proceedings before the board. In the second trial the board sought, under section 1094.5, Code of Civil Procedure, to offer testimony as to the dangerous character of the drugs in question (it relied on official notice of the dangerous character of Dexedrine and Equanil in the administrative hearing) ; Judge Tante denied the request.

issue whether the hearing officer could take official notice of the dangerous character of the drugs referred to by their trade names, and it follows that if he could not, the evidence would not support the board's finding that Dexedrine and Equanil are dangerous drugs. Too, this was the basis of Judge Tante's initial ruling granting the peremptory writ—"primarily on the fact that the administrative agency did not have the power to take official notice of the fact that" Dexedrine and/or Equanil were dangerous drugs. Later he concluded he was in error and reversed the ruling.

To demonstrate that there was "no reasonable certainty in the minds of either of the superior court judges that the appellants were guilty of anything," appellants rely on remarks made by both judges wherein they indulged in "thinking aloud" their tentative conclusions and reasons therefore. "Fortunately for the stability of judgments the findings of the court are those expressed in writing. What the judge said may be useful to explain the findings but it cannot overcome them, and if contradictory, must be disregarded." *Whitlow* v. *Board of Medical Examiners,* 248 Cal. App.2d 478, 487 [56 Cal.Rptr. 525].) No significance may be attached to Judge Nutter's remarks as having any bearing on the final action taken by Judge Tante which is the decision on review before this court; and the latter's indecisiveness cannot invalidate his ultimate written Findings of Fact and Conclusions of Law and Judgment. The law is settled that an appellate court reviews the action taken by the trial judge, not his judicial reasoning or comment. (*Kramer* v. *State Board of Accountancy,* 200 Cal. App.2d 163, 177 [19 Cal. Rptr. 226].)

Appellants claim that "it is obvious that Judge Tante did not fully reweigh the evidence" because he commented that " 'the court did not have an opportunity to see the witnesses [as did the Hearing Officer] . . .' " is supported by neither the record nor the law. The comment was made at the *first* hearing when Judge Tante *granted* appellants' petition; moreover in context it can only be interpreted as according with the rule that although the superior court reviews the administrative record to see where the weight of the evidence lies, the credibility of witnesses is for the determination of the board. (*Kendall* v. *Board of Osteopathic Examiners,* 105 Cal.App.2d 239, 245 [233 P.2d 107].) The totality of Judge Tante's remarks, the findings of fact, and the recitals in Findings of Fact and Conclusions of Law and

the Judgment completely negative the assertion that he did not fully weigh the evidence. (*Kramer* v. *State Board of Accountancy*, 200 Cal.App.2d 163, 176 [19 Cal.Rptr. 226].) It was the superior court's duty to undertake an independent review of the evidence and it is clear from the record before us that Judge Tante did just that.

As part of their claim that "the decision of the court below is not supported by the evidence," appellants contend that their pleas of guilty to violations of 21 U.S.C. 331(k) in the federal court do not constitute admissions that they refilled prescriptions for dangerous drugs without authority of the prescribers in violation of section 4229, Business and Professions Code. Referring to count I[6] to which Arenstein pleaded guilty (the same applies to count VIII to which Ursem pleaded guilty) an analysis of the offense charged therein and a comparison of the elements of that offense with the allegations of the administrative accusation (III, IV) and the provisions of section 4229 convince us of the error of appellants' position. It is clear from the federal information and the applicable federal statutes that Arenstein's act of dispensing

[6] "That prior to June 4, 1963, a number of Dexedrine tablets, a drug within the meaning of 21 U.S.C. 353(b)(1)(B), were shipped in interstate commerce into the State of California in a bottle labeled in part as follows:

"CAUTION—Federal law prohibits dispensing without prescription.

"That thereafter, on or about June 4, 1963, and while a number of tablets of said drug were being held for sale after shipment in interstate commerce as aforesaid, at North Palos Drug Corporation, 26636 S. Western Avenue, Lomita, California, the said NORTH PALOS DRUG CORPORATION, a corporation organized and existing under the laws of the State of California and trading and doing business at Lomita, California, and WILLIAM M. ARENSTEIN, an individual, at the times hereinbefore mentioned president of said corporation, the defendants herein, did, at Lomita, California, within the Central Division of the Southern District of California, cause a number of tablets of said drug to be dispensed in a vial to one William M. Chaffee, upon his request for a refill of a written prescription identified as Number 39213, dated May 14, 1963, without obtaining authorization from the prescriber;

"That displayed upon said vial was certain labeling which consisted among other things, of the following printed and graphic matter:

"NORTH PALOS DRUG CORP.
26636 So. Western Ave., Lomita, Calif.
Rx No. 39213
ONE IN MORNING          5-16-63WA

"That said act of causing the dispensing of said drug as aforesaid was an act caused to be done by said defendants contrary to the provisions of 21 U.S.C. 353(b)(1) which resulted in said drug in said vial being misbranded while held for sale, in violation of 21 U.S.C. 331(k)."

Dexedrine, in a vial labeled as described, to Chaffee upon his request for refill of a prescription without authority from the prescriber was the means by which he committed the violation of 21 U.S.C. 331(k), thus an element of the offense; that when he pleaded guilty to the offense charged in count I he admitted committing the specific act alleged therein contrary to the provisions of 21 U.S.C. 353(b)(1); and that the specific act by which he committed the federal violation of misbranding as alleged in count I contains all of the elements of a violation of section 4229, Business and Professions Code,[7] as charged in the administrative accusation. Thus, Arenstein and Ursem each by his plea of guilty admitted refilling the same prescription for the same person on the same date for the same drug without authorization from the prescriber as charged in paragraphs III and IV of the administrative accusation.

A voluntary plea of guilty is the equivalent of a conviction of the crime (*People* v. *Jones,* 52 Cal.2d 636, 651 [343 P.2d 577]); all allegations of the offense are admitted by a defendant when he enters his plea. (*People* v. *Rhodes,* 137 Cal.App. 385, 387 [30 P.2d 1026].) A plea of guilty in a criminal prosecution is ''a conclusive admission of [his] guilt and of every element entering into the offense charged'' (*People* v. *Whitton,* 112 Cal.App.2d 328, 333 [246 P.2d 60]) and ''constitutes no less than a confession of every factor comprising the charge contained in the pleading.'' (*People* v. *Ward,* 118 Cal.App.2d 604, 608 [258 P.2d 86].) According to *Berg* v. *United States* (9th Cir. 1949) 176 F.2d 122, a plea of guilty means guilty ''as charged'' in the information, and by it ''all averments of fact are admitted. . . . The effect is the same as if the defendant had been tried before a jury and had been found guilty upon evidence covering all material facts.'' (P. 125.)

Appellants' second argument is that the pleas of guilty were not conclusive and should not be given great weight, professional licenses should not be disciplined solely on the uncorroborated admission of the accused and the pleas may be explained away.

Without question the pleas of guilty (Exh. 2) were competent evidence. ''A plea of guilty in a criminal prose-

---

[7]''No prescription for any dangerous drug may be refilled except upon authorization of the prescriber which may be given orally ɯr at the time of giving the original prescription. No prescription for any dangerous drug defined in subsections (a) and (c) of Section 4211 may be designated refillable as needed.''

cution is admissible in a civil action growing out of the same offense as an admission of a party against interest. (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.*, 58 Cal.2d 601, 605 [25 Cal.Rptr. 559, 375 P.2d 439]; *Vaughn* v. *Jonas*, 31 Cal.2d 586, 595 [191 P.2d 432]; *American Fire etc. Service* v. *Williams*, 171 Cal.App.2d 397, 402 [340 P.2d 644]; *Burbank* v. *McIntyre*, 135 Cal.App. 482, 485-486 [27 P.2d 400].)'' *Ray* v. *Jackson*, 219 Cal.App.2d 445, 452 [33 Cal.Rptr. 339]); and admissible ''as the deliberate declaration or admission against interest that the fact is so; in other words, a solemn confession of the very matter charged in the civil action.'' (*Langensand* v. *Obert*, 129 Cal.App. 214, 218 [18 P.2d 725].)

The rule in *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.*, 58 Cal.2d 601 [25 Cal.Rptr. 559, 375 P.2d 439], and *Odian* v. *Habernicht*, 133 Cal.App.2d 201 [283 P.2d 756], permits a party in a subsequent civil action to contest the truth of the matters admitted by his plea of guilty, present all facts surrounding the same including the nature of the charge and the plea, and explain why he entered such plea. This is exactly what Arenstein and Ursem did. While the credibility of witnesses may have been for the hearing officer, it was the duty of the superior court to independently review the evidence. Thus, the weight and significance of the fact of appellants' pleas of guilty, as in other cases, were for the court below. (*Vaughn* v. *Jonas*, 31 Cal.2d 586, 597 [191 P.2d 432]; *Odian* v. *Habernicht*, 133 Cal.App.2d 201, 204 [283 P.2d 756].)In addition to the testimony of Arenstein and Ursem, the administrative record contains their pleas of guilty, their written representations (Petitions) to the federal court for its acceptance of their pleas and those (Certificates) of their counsel, the federal information and whatever reasonable inferences can be drawn from the absence of testimony of the doctors. The superior court determined that the weight of the evidence lies in support of the board's decision and findings that licensees did refill prescriptions for dangerous drugs without authorization from the prescribers; and found ''as facts the matters related in the Board's finding of fact.'' Following *Moran* v. *Board of Medical Examiners*, 32 Cal.2d 301, 308 [196 P.2d 20], and *Yakov* v. *Board of Medical Examiners*, 68 Cal.2d 67, 75 [64 Cal.Rptr. 785, 435 P.2d 553], it is our view that the record supports the superior court's decision. (See also *Manning* v. *Watson*, 108 Cal.App.2d 705, 711 [239 P.2d 688].)

Referring to the absence of a specific finding that the corporation had refilled any prescription in violation of section 4229, Business and Professions Code, and arguing that there is no evidence that it violated the statute, appellant corporation claims that the court erred in concluding that "The Board properly disciplined the holder of the pharmacy permit, North Palos Drug Corp., upon evidence of the illegal acts of its officers and employees, Arenstein and Ursem, as the holder of a pharmacy permit is legally responsible to the Board for the illegal acts of its officers and employees done in the course of the licensed business." (III)

The corporation was charged, with Arenstein (Par. III) and with Ursem (Par. IV), with being "subject to disciplinary action" for violations of the state pharmacy law because of the acts of Arenstein and Ursem "while [each was] on duty as a pharmacist at" the corporation. Arenstein testified he was president of and a pharmacist for the corporation and owned 49 percent of the common stock, and Ursem that she was a pharmacist and an employee of the corporation; both admitted they refilled the prescriptions in question for the corporation. The evidence clearly establishes that Arenstein and Ursem committed the illegal acts charged in the course of the business of the permittee. In addition, Exhibit 2 shows that the federal information specifically named the corporation as a defendant with Arenstein, its president (count I.) and with Ursem, a pharmacist for said corporation (count VIII) to which charges the individuals pleaded guilty; Arenstein admitted that in addition to probation granted to him and Ursem, the corporation was fined $900 by the federal court. Inasmuch as there was no trial in the federal court and the other counts were dismissed both the board and the superior court could reasonably infer that the fine was based on a plea of guilty.

If a licensee elects to operate his business through employees he must be responsible to the licensing authority for their conduct in the exercise of his license and he is responsible for the acts of his agents or employees done in the course of his business in the operation of the license. (*Cornell v. Reilly*, 127 Cal.App.2d 178, 186-187 [273 P.2d 572].)

One permitted to maintain and conduct a pharmacy may be disciplined by the pharmacy board for the unlawful acts of his employees while engaged in the conduct and operation of the pharmacy, although the permittee does not author-

ize the unlawful acts and did not have actual knowledge of the activities. (*Randle* v. *California State Board of Pharmacy*, 240 Cal.App.2d 254, 261 [49 Cal.Rptr. 485].) This would be particularly true of a corporate permittee which could act only through its officers, agents or employees. That North Palos Drug Corporation is guilty of the misconduct alleged is implicit in the findings of both the board and the superior court that each licensee committed his illegal act "while on duty as a pharmacist" at the corporation; and the court correctly concluded that the board properly disciplined the holder of the pharmacy permit, North Palos Drug Corporation, upon the evidence of the illegal acts of its officers and employees, Arenstein and Ursem.

Likewise without substance is the contention that there is no evidence that Dexedrine and Equanil are dangerous drugs within the meaning of section 4211, Business and Professions Code.[8] Exhibit 2 shows that Arenstein and Ursem pleaded guilty to counts I and VIII (federal information) which referred to the drugs by their trade names of Dexedrine and Equanil and alleged that both were shipped into this state in a bottle labeled "CAUTION—Federal law prohibits dispensing without prescription" and that both were dispensed

---

[8] "'Dangerous drug' means any drug unsafe for self-medication, except preparations of drugs defined in subdivisions (e), (f), (h), and (i) hereof, designed for the purpose of feeding or treating animals (other than man) or poultry, and so labeled, and includes the following:

"(a) Any hypnotic drug. 'Hypnotic drug' includes acetyluria derivatives, barbituric acid derivatives, chloral, paraldehyde, sulfomethane derivatives, or any compounds or mixtures or preparations that may be used for producing hypnotic effects.

"(b) Aminopyrine, or compounds or mixtures thereof.

"(c) Amphetamine, desoxyephedrine, or compounds or mixtures thereof except preparations for use in the nose and unfit for internal use.

"(d) Cinchophen, neocinchophen, or compounds or mixtures thereof.

"(e) Diethyl-stilbestrol, or compounds or mixtures thereof.

"(f) Ergot, cotton root, or their contained or derived active compounds or mixtures thereof.

"(g) Oils of croton, rue, savin or tansy or their contained or derived compounds or mixtures thereof.

"(h) Sulfanilamide or substituted sulfanilamides, or compounds or mixtures thereof, except preparations for topical application only containing not more than five percent (5%) strength.

"(i) Thyroid and its contained or derived active compounds or mixtures thereof.

"(j) Phenylhydantoin derivatives.

"(k) Any drug which bears the legend: 'Caution: federal law prohibits dispensing without prescription.'

"(l) Hypnotic drugs when combined and compounded with non-hypnotic drugs."

by appellants upon request for refill of a prescription without authority of the prescriber in a vial not containing the legend; and that Dexedrine is a drug within the meaning of 21 U.S.C. 353 (b)(1)(B) and Equanil is a drug within the meaning of 21 U.S.C. 353 (b)(1)(C). A reading of the information and the relevant federal statutes indicates that the drugs were considered not to be safe for use except under the supervision of a practitioner. (See also § 4211, subd. (k), Bus. & Prof. Code.) In addition, counsel for the board requested the hearing officer sitting for the board to, and he did, take official notice under section 11515, Government Code,[9] that Dexedrine and Equanil are dangerous drugs within the meaning of section 4211, Business and Professions Code. Appellants interposed no objection to this procedure, offered nothing by way of evidence or by oral or written presentation of authority to rebut the matters officially noticed by the hearing officer, as permitted by the statute, and made no assertion that Dexedrine or Equanil are not dangerous drugs within the meaning of the statute; thus, the board properly found them to be dangerous drugs. (*Savelli* v. *Board of Medical Examiners,* 229 Cal.App.2d 124, 139-140 [40 Cal.Rptr. 171].) The superior court did not take ''official notice'' of anything; to the contrary, its finding was based on its review of the evidence adduced on the administrative level part of which resulted from official notice taken by the hearing officer. Further, the superior court properly concluded that ''The procedure followed by the hearing officer in taking official notice of the character of Dexedrine and Equanil as dangerous drugs was authorized by Government Code section 11515.'' This section provides a shorthand method of proving facts about which there is not dispute. Further, it can hardly be questioned that the ingredients of a drug referred to by trade name, and whether they constitute it a dangerous drug within the meaning of section 4211, are scientific matters within the special field of the State Board of Pharmacy.

---

[9]Section 11515, Government Code, provides: ''In reaching a decision official notice may be taken, either before or after submission of the case for decision, of any generally accepted technical or scientific matter within the agency's special field, . . . Parties present at the hearing shall be informed of the matters to be noticed, and those matters shall be noted in the record, referred to therein, or appended thereto. Any such party shall be given a reasonable opportunity on request to refute the officially noticed matters by evidence or by written or oral presentation of authority, the manner of such refutation to be determined by the agency.''

Finally, in a brief argument without citation of supporting authority, appellants argue that section 4211, subdivision (k) is unconstitutional because, read with section 4229, a private person is permitted to define a crime for it is the manufacturer who decides which drug shall bear the legend. Section 4211 provides that dangerous drugs include: "(k) Any drug which bears the legend: 'Caution: federal law prohibits dispensing without prescription.'" A similar contention was raised in *Wilke & Holzheiser, Inc.* v. *Department of Alcoholic Beverage Control*, 65 Cal.2d 349, 369 [55 Cal.Rptr. 23, 420 P.2d 735], and rejected as being without merit. However, we refrain from further discussion of appellants' argument in light of the fact that it is made for the first time on this appeal. (*Jenner* v. *City Council*, 164 Cal.App.2d 490, 498 [331 P.2d 176]; *Hershey* v. *Reclamation Dist. No. 108*, 200 Cal. 550, 564 [254 P. 542].)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.