[No. B141501. Second Dist., Div. One. Oct. 17, 2001.]

20TH CENTURY INSURANCE COMPANY, Plaintiff, Cross-defendant and Respondent, v.
HUGH D. SCHURTZ, Defendant, Cross-complainant and Appellant.

COUNSEL

Ronald P. Schneider for Defendant, Cross-complainant and Appellant.

Haight, Brown & Bonesteel, Michael J. Leahy, Jules S. Zeman, Christopher Kendrick and Rita Gunasekaran for Plaintiff, Cross-defendant and Respondent.

OPINION

VOGEL (MIRIAM A.), J.—A woman shot and injured a man. As a result of the shooting, the woman entered a nolo contendere plea to a felony (assault with a firearm), and she also suffered a civil judgment against her and in favor of the man. The woman is bankrupt but she had homeowner's insurance at the time of the shooting, and the man wants to collect his judgment from her insurer. The policy excludes coverage for "bodily injury . . . which is a foreseeable result of an intentional or criminal act of [the] insured or which is in fact intended by [the] insured." In the insurer's declaratory relief action against the man, the trial court granted the insurer's motion for summary judgment. The man appeals, claiming there are questions of fact about the woman's intent at the time of the shooting. We affirm on the ground that the "criminal act" exclusion applies without regard to the insured's intent and (based on the undisputed facts of this case) without regard to the doctrine of collateral estoppel.

FACTS

Armed with a semi-automatic handgun, Susan Paster entered Hugh Schurtz's residence and shot at Schurtz, grazing his forehead and finger. Paster was arrested and charged with attempted murder and assault with a firearm, with an allegation that she had personally used a firearm. (Pen. Code, §§ 664, 187, subd. (a), 245, subd. (a)(2), 12022.5, subds. (a), (d), 1192.7, subd. (c)(8).) Paster entered a not guilty plea and denied the allegation.

About three weeks later, Schurtz sued Paster for damages on three intentional tort theories (assault, battery and intentional infliction of emotional distress), alleging in his verified complaint that Paster had pointed a loaded gun at his temple, threatened to kill him, then "intentionally and willfully discharged [the] handgun . . . for the purpose of killing [him]."

In December 1994, in her criminal case, Paster entered a plea of nolo contendere to one felony count (assault with a firearm) and admitted the personal use allegation. The trial court accepted Paster's waiver of her trial rights, found a factual basis for Paster's plea and admission, found Paster guilty of assault with a firearm, found true the allegation that Paster had personally used the gun, and accepted Paster's plea as one to a serious felony within the meaning of Penal Code section 1192.7. (Pen. Code, §§ 245, subd. (a)(2), 12022.5, subds. (a), (d).) As part of a negotiated disposition, Paster was taken into custody the same day and sent to state prison for a diagnostic evaluation with the understanding that, when completed, the evaluation would be relied on by the court to determine whether Paster would be sentenced to state prison for a term of five years or placed on probation. (Pen. Code, § 1203.03.) The attempted murder count was dismissed.

In July 1995, Schurtz filed an amended (unverified) complaint in his civil action, adding a cause of action for negligence and alleging that Paster had "carelessly and negligently" ingested drugs and alcohol, then gone to Schurtz's house and brandished a pistol and waved it about, which "result[ed] in the pistol discharging in the direction of, and near . . . Schurtz."

Paster answered Schurtz's first amended complaint, then tendered the defense of Schurtz's action to 20th Century Insurance Company (her homeowner's insurer at the time of the shooting).[1] Subject to a reservation of rights, 20th Century agreed to defend Paster, and lawyers were retained to

---

[1]Around this time, Paster sought protection from the bankruptcy court, as a result of which Schurtz's action against Paster was stayed. (11 U.S.C. § 362.) In April 1996, on Schurtz's motion, the bankruptcy court lifted the stay to permit Schurtz to pursue his civil action against

represent her in Schurtz's action. In October 1997, Paster, Schurtz, and their lawyers executed a stipulation in which (1) Paster "admit[ted] liability for all injuries and damages suffered by . . . Schurtz" on his negligence cause of action, (2) Schurtz dismissed his intentional tort causes of action, and (3) the parties agreed that "the only issue to be submitted to the trier of fact . . . at trial [would] be [Schurtz's] damages." The stipulation was not signed or approved by 20th Century.

In the fall of 1997, Schurtz testified at his deposition that Paster had gained entry to his house by breaking a window, that she woke him by hitting him on the head with her fist or the gun, held the gun at his head, and said it wasn't a joke. When he started to get up, she "put the gun at [his] crotch," told him not to move, put the gun back to his head and said, "The bullet's in the chamber. You're dead." He leaned forward and "[t]he gun fired." About one week later, Paster testified at her deposition that she never intended to inflict any kind of injury on Schurtz, that she always carried a gun for protection, and that she took her gun out of her purse at Schurtz's house only after he woke up, got up, and frightened her. The gun went off accidentally as he struggled to get it away from her.[2]

In August 1998, Schurtz's damages were tried to a jury, which awarded him $103,838.66. 20th Century refused to pay the judgment, and (in March 1999) sued Paster and Schurtz for declaratory relief, asking for a judicial determination that it was not obligated to pay Schurtz's judgment against Paster—on the ground that the policy expressly excluded coverage for "bodily injury . . . which is a foreseeable result of an intentional or criminal act of [the] insured or which is in fact intended by [the] insured." (Ins. Code, § 533.) Schurtz answered and cross-complained against 20th Century, alleging a direct right of recovery and asking for damages in the amount of his judgment against Paster. (Ins. Code, § 11580.)

20th Century moved for summary judgment on the ground that Schurtz's injuries were the result of Paster's intentional and criminal act and, as such,

---

Paster—but only to the extent that an award of compensatory damages, if any, would be recoverable from 20th Century if, in fact, there was coverage for the shooting.

[2] By the time of her deposition, Paster's story was that, at the time of the shooting, she and her husband were splitting their time between two houses (they had purchased a new house but had not yet sold their old house). That evening, she was at the new house. She drank several beers ("possibly" more than 10). She took a Valium. Later, she drove to her other house to feed her cats. When the cats weren't where she expected to find them, she drove to the front of Schurtz's house (his lot adjoins her backyard), parked on the wrong side of the street, got out of her car carrying her purse (in which she had the gun she always carried, a Glock), and walked to Schurtz's house in search of her cats. She thought his house was vacant (because it was undergoing earthquake repairs) and noticed the side door was open. Curious about the repairs, she entered the house, turned on the light, and saw Schurtz asleep on a sofa. Schurtz awoke, jumped out of bed, and landed on the floor next to Paster. Frightened, Paster took the gun from her purse. They struggled and the gun discharged.

expressly excluded from coverage by the terms of Paster's insurance policy. 20th Century's evidence (documents from Paster's criminal case, and the pleadings and deposition transcripts from Schurtz's civil action against Paster) established Paster's plea of nolo contendere, her admission of the gun use allegation, the criminal court's finding of guilt, and Schurtz's admission that Paster had awakened him by hitting him with her fist or the gun, then threatened to kill him.

In his opposition to 20th Century's motion, Schurtz picked at some nits (for example, whether the transcript of Paster's plea was of a "plea" or a "plea hearing," whether Schurtz's civil action was filed on October 24 or October 28, 1997, and other matters of equal weight and significance) but otherwise admitted the material facts relied on by 20th Century—except those pertaining to Paster's intent at the time of the shooting. Schurtz offered Paster's deposition testimony to show that, notwithstanding Paster's criminal conviction and Schurtz's original complaint for intentional tort damages, Paster was acting in self-defense when she took her gun from her purse, that she never intended to injure Schurtz, and that her actions were negligent, not intentional.

The trial court granted 20th Century's motion for summary judgment, finding (among other things) that Paster's plea of nolo contendere to assault with a firearm and her admission of the gun use allegation were based on the same acts as Schurtz's tort claims against Paster, that 20th Century's policy excluded coverage for bodily injury that was the foreseeable result of an intentional or criminal act, that Paster was engaged in a criminal act at the time of the shooting, that the ensuing struggle and bodily injury were foreseeable results of her act and that, as a result, there was no coverage under 20th Century's policy. Schurtz appeals from the judgment.

## DISCUSSION

Schurtz contends there are triable issues of material fact concerning Paster's intent at the time Schurtz was shot and, therefore, about whether her actions were criminal. We disagree.

## A.

At the time this case was before the trial court, 20th Century's exclusion of coverage for injuries caused by an "intentional or criminal act" was treated as a legal redundancy, and no real distinction was made between an act that might be one but not the other. So viewed (as it is by Schurtz on this appeal), the summary judgment probably could not stand. (*Teitelbaum Furs,*

*Inc. v. Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 603-606 [25 Cal.Rptr. 559, 375 P.2d 439] [in a subsequent civil case, a final judgment of conviction in a prior criminal case conclusively bars relitigation of any issue necessarily decided in the criminal case *except* where the prior criminal case has been resolved by guilty plea rather than trial, in which event the guilty plea is admissible in a subsequent civil action only as an admission]; see also *Pease v. Pease* (1988) 201 Cal.App.3d 29, 30, 32-34 [246 Cal.Rptr. 762] [a trial court in a civil case may not give collateral estoppel effect to a criminal conviction involving the same issues of the conviction resulting from a guilty plea]; *Yarbrough v. Superior Court* (1985) 39 Cal.3d 197, 205 [216 Cal.Rptr. 425, 702 P.2d 583]; *Interinsurance Exchange v. Flores* (1996) 45 Cal.App.4th 661, 672-673 [53 Cal.Rptr.2d 18]; and see Pen. Code, § 1016 [a plea of nolo contendere to a felony "shall be considered the same as a plea of guilty" and the legal effect of the one is the same as the other in a subsequent civil action as well as in the criminal action]; *Arenstein v. California State Bd. of Pharmacy* (1968) 265 Cal.App.2d 179, 190 [71 Cal.Rptr. 357] [the plea is an admission of every element of the charged offense].)[3]

## B.

 But there *is* a difference between an exclusion that refers only to "intentional" acts and one that refers also to "criminal" acts, and 20th Century's policy expressly and unequivocally excludes coverage for injuries resulting from a "criminal act." Whatever factual dispute there may be about Paster's *intent* at the time of the shooting, the bare fact of her *conviction* is undisputed (and at this point could not be disputed). Since the means by which Paster stands convicted are irrelevant in this context, it follows that 20th Century's motion for summary judgment was properly granted.

## 1.

In *Safeco Ins. Co. v. Robert S.* (2001) 26 Cal.4th 758 [110 Cal.Rptr.2d 844, 28 P.3d 889], our Supreme Court held that, notwithstanding an exclusion of coverage for bodily injury arising out of an "illegal act," an insurer is

---

[3]We summarily reject 20th Century's contention that we ought to ignore *Teitelbaum Furs'* limitation on the collateral estoppel effect of conviction based on a plea of guilty or nolo contendere. As the Supreme Court reminded us this year, the *Teitelbaum Furs* rule is alive and well in California. (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1204 [108 Cal.Rptr.2d 471, 25 P.3d 670] [holding that, in light of compelling considerations peculiar to a legal malpractice claim arising out of a criminal conviction, "an intact conviction precludes recovery in a legal malpractice action even when ordinary collateral estoppel principles otherwise are not controlling, for example because a conviction was based upon a plea of guilty that would not be conclusive in a subsequent civil action involving the same issues"].)

obligated to defend and indemnify its insureds in a wrongful death action brought against them after their teenage son "accidentally" shot and killed his friend (as a result of which the son was made a ward of the juvenile court after a petition charging him with involuntary manslaughter was sustained). (*Id.* at p. 761.) In *Safeco*, where the policy did not have a "criminal act" exclusion, the Supreme Court explained the ambiguity of the language that *was* used and, in that context, made it clear that the ambiguity could have been avoided by the use of a "criminal act" exclusion:

"Safeco agreed to defend and indemnify the insureds in the event of claims brought against any insured for bodily injury caused by 'an occurrence,' which the policy defined as an accident resulting in bodily injury during the policy period. Excluded from coverage was liability for bodily injury 'arising out of any *illegal act* committed by or at the direction of an insured.' (Italics added.) The policy did not define the term 'illegal act.' [¶] . . . [¶]

". . . The phrase 'illegal act' is susceptible of two reasonable meanings. . . . [T]he Court of Appeal, relying on a dictionary definition, construed the term broadly, as meaning any act prohibited by law. But the term can also be interpreted more narrowly as meaning a violation of criminal law. This is the construction Safeco urges us to adopt. Certain thesauruses do treat the term 'illegal' as synonymous with 'criminal.' . . . If we were to adopt this meaning in the context of the policy here, we would have to treat the policy's clause excluding coverage for an 'illegal act' as the equivalent of a clause excluding coverage for a 'criminal act.'

"The policy before us, however, contains not a *criminal act* exclusion but an *illegal act* exclusion. *Had Safeco wanted to exclude criminal acts from coverage, it could have easily done so. Insurers commonly insert an exclusion for criminal acts in their liability policies.* (Croskey & Kaufman, Cal. Practice Guide: Insurance Litigation (The Rutter Group 2000) ¶¶ 7:331.5, 7:2256, pp. 7A-86, 7I-23 . . . .) Because Safeco chose not to have a criminal act exclusion, instead opting for an illegal act exclusion, we cannot read into the policy what Safeco has omitted. To do so would violate the fundamental principle that in interpreting contracts, including insurance contracts, courts are not to insert what has been omitted. . . .

"We now consider the Court of Appeal's construction of the term 'illegal' as meaning [a] violation of *any* law, whether civil or criminal. . . . That construction, however, is so broad as to render the policy's liability coverage practically meaningless. [¶] For instance, a violation of 'any law' would include the law governing negligence, which holds individuals responsible

for the failure to exercise ordinary care resulting in injury to another. . . . The duty to exercise ordinary care is imposed by law. . . . A violation of that duty is therefore *a violation of law*. Broadly construed, a violation of *any* law, whether civil or criminal, is an illegal act. An insured's negligent act, being a violation of law and therefore *an illegal act,* would thus not be covered under Safeco's policy excluding coverage for an insured's illegal acts.

"But the homeowners policy that the insureds here bought from Safeco expressly provided that Safeco would defend and indemnify them for bodily injury caused by 'an occurrence,' which the policy defines as 'an accident . . . which results, during the policy period, in bodily injury or property damage.' Because the term 'accident' is more comprehensive than the term 'negligence' and thus includes negligence . . . , Safeco's homeowners policy promised coverage for liability resulting from the insured's negligent acts. That promise would be rendered illusory if, as discussed above, we were to construe the phrase 'illegal act,' as contained in the policy's exclusionary clause, to mean violation of any law, whether criminal or civil. When reasonably practical, contracts are to be interpreted in a manner that makes them reasonable and capable of being carried into effect, and that is consistent with the parties' intent. . . . [¶] . . . [¶]

"It is not clear how the Court of Appeal defined the word 'illegal' as it is used in the exclusionary clause. *If the Court of Appeal construed the exclusionary clause as excluding every offense, that is, every crime, it defines the word 'illegal' as meaning 'criminal.' As we have seen, that definition is inappropriate here because it rewrites the policy by inserting what has been omitted.* . . .

"As we noted earlier, 'ambiguous terms are resolved in the insureds' favor, consistent with the insureds' reasonable expectations.' . . . An insured should not be expected to know the subtle legal distinctions between the concepts of ordinary negligence and gross negligence. Such distinctions are not objectively within the reasonable expectations of the insured. [¶] . . . [¶] In short, because the illegal act exclusion cannot reasonably be given meaning under established rules of construction of a contract, it must be rejected as invalid. . . ." (*Safeco Ins. Co. v. Robert S., supra,* 26 Cal.4th at pp. 762-766, some italics added, fn. omitted.)

## 2.

The corollary of the *Safeco* rule is that where, as here, an insurer *does* want to exclude criminal acts from coverage and *has* expressly done so in

language that is clear and unambiguous, the exclusion will be given effect. (*Safeco Ins. Co. v. Robert S., supra,* 26 Cal.4th at pp. 763-764; see also *20th Century Ins. Co. v. Stewart* (1998) 63 Cal.App.4th 1333, 1337-1338 [74 Cal.Rptr.2d 492] ["criminal act" exclusion is not ambiguous]; Croskey & Kaufman, Cal. Practice Guide: Insurance Litigation (The Rutter Group 2000) ¶¶ 7:331.6 [the criminal act exclusion "bars coverage even for acts *not* known by the insured to be unlawful when committed"], 7:2257 [the "criminal acts" exclusion "applies *regardless* of intent"], pp. 7A-86, 7I-23; Pen. Code, §§ 6 [an act made punishable by the Penal Code is a crime], 15 [a crime is an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, the punishment of death, or imprisonment, or fine, or removal from office, or disqualification to hold an office of honor or trust or profit in this State]; 1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Introduction to Crimes, § 4, pp. 13-15; and see *Hooper v. Allstate Ins. Co.* (Ala. 1990) 571 So.2d 1001, 1002-1003.)

## C.

Whatever merit there might be to Schurtz's contention that Paster's criminal conviction does not bar relitigation of the issue of Paster's intent at the time of the shooting, the collateral estoppel issue is relevant only to the *intentional acts* exclusion—because there is conflicting evidence on the issue of intent, and because collateral estoppel does not bar relitigation of an issue necessarily decided in a prior criminal case where, as here, that issue was determined by a plea of guilty or nolo contendere rather than by trial. (*Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd., supra,* 58 Cal.2d at pp. 605-606.)

But 20th Century's policy also excludes coverage for an injury resulting from a *criminal act,* and there can be no dispute that Paster committed a criminal act. No matter how often she and Schurtz redefine the facts surrounding the shooting, the evidence is *undisputed that Paster was convicted of a felony.* (Pen. Code, §§ 245, subd. (a)(2), 12022.5, subds. (a), (d).) This is *not* a matter of an admission by Paster or Schurtz. The *conviction* is undisputed and indisputable. And although Schurtz now contends that Paster's conduct was not criminal because it was not intentional, Schurtz's characterization of the legal effect of Paster's act cannot change the undisputed fact that she was convicted of a crime. (*Allstate Ins. Co. v. Talbot* (N.D.Cal. 1988) 690 F.Supp. 886, 889 [the determination whether an act is criminal within the meaning of the criminal act exclusion does not depend on whether the insured intended the damages]; Evid. Code, § 1300 [evidence of a final judgment adjudging a person guilty of a felony "is not made inadmissible by the hearsay rule when offered in a civil action to prove any

fact essential to the judgment whether or not the judgment was based on a plea of nolo contendere"]; *Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714, 736, fn. 18 [80 Cal.Rptr.2d 506, 968 P.2d 65].)[4]

Since the *criminal act* exclusion is independent of the *intentional act* exclusion, there are no policy reasons to require more than has been shown in this case—that the insured's act was criminal in every sense of the word. (*20th Century Ins. Co. v. Stewart, supra,* 63 Cal.App.4th at pp. 1337-1338; Croskey & Kaufman, Cal. Practice Guide: Insurance Litigation, *supra,* ¶¶ 7:331.6 [the criminal act exclusion "bars coverage even for acts *not* known by the insured to be unlawful when committed"], 7:2257 [the "criminal acts" exclusion "applies *regardless* of intent"], pp. 7A-86, 7I-23.)[5] It

---

[4] *Calvillo-Silva* construes section 847 of the Civil Code, which provides that a landowner is not liable for injuries sustained by a person during the commission of specified crimes while on the landowner's property—unless the landowner's conduct was willful, wanton, or criminal, or unless his property was dangerous within the meaning of the statute. In *Calvillo-Silva,* a robber sued his victim for personal injury damages. The victim moved for summary judgment, and presented evidence of the robber's plea of nolo contendere to one count of felony grand theft, plus the victim's declaration to the effect that he shot in self-defense. The trial court granted summary judgment but the Court of Appeal reversed. The Supreme Court granted review to determine "the scope of the statutory immunity, and in particular to consider whether [Civil Code] section 847 protects the intentional use of deadly force when a statutorily enumerated felony has been committed." (*Calvillo-Silva v. Home Grocery, supra,* 19 Cal.4th at p. 718.) The Supreme Court held that immunity is available to one who acts in self-defense but agreed with the Court of Appeal that there were triable issues of material fact concerning the reasonableness of the landowner's conduct. (*Id.* at pp. 736-737.) In a footnote apparently included for the benefit of the trial court on remand, the majority opinion holds that, *under Civil Code section 847, "a person who is convicted of a statutorily enumerated offense pursuant to a plea bargain or a plea of nolo contendere is barred from arguing that the conviction may be disregarded in determining the statute's application. . . . Accordingly, under [Civil Code] section 847 plaintiff may not contest involvement in an attempted grand theft and may not litigate the facts behind his nolo contendere plea to avoid triggering the statute's application."* (*Calvillo-Silva v. Home Grocery, supra,* 19 Cal.4th at p. 736, fn. 18, italics added.) Justice Werdegar disagreed with the quoted passage, pointing out in her concurring and dissenting opinion that, "under well-settled California law, a conviction by plea of guilty or no contest *does not preclude the convicted person from relitigating issues of guilty conduct or intent in a subsequent civil trial,* although the plea, whether guilty or no contest, is relevant and admissible against the convicted felon to show his or her factual guilt." (*Calvillo-Silva v. Home Grocery, supra,* 19 Cal.4th at p. 737 (conc. & dis. opn. of Werdegar, J.).) In light of the Supreme Court's subsequent *unanimous* decision in *Coscia v. McKenna & Cuneo, supra,* 25 Cal.4th 1194, we view *Calvillo-Silva*'s holding vis-à-vis a guilty or no contest plea in the context of Civil Code section 847 as the same sort of exception to the rule of *Teitelbaum Furs* identified in *Coscia.* (*Coscia v. McKenna & Cuneo, supra,* 25 Cal.4th at p. 1204 ["we hold that an intact conviction precludes recovery in a legal malpractice action even when ordinary collateral estoppel principles otherwise are not controlling, for example because a conviction was based upon a plea of guilty that would not be conclusive in a subsequent civil action involving the same issues"].)

[5] At oral argument, we expressed concern about the opportunity for collusion inherent in the application of *Teitelbaum Furs* to the facts of this case. We deferred submission and asked for

follows that, on the undisputed facts of this case, the doctrine of collateral estoppel is irrelevant.

### DISPOSITION

The judgment is affirmed. The parties are to pay their own costs of appeal.

**VOGEL (MIRIAM A.), J.**—Obviously, I concur in the opinion I authored. I write separately to emphasize two points.

First, I agree with the notion that Schurtz *should* be bound under the *D'Amico* rationale, but I have doubts about whether that approach would work where, as here, Schurtz's rights under Paster's insurance policy are derivative and dependent upon Paster's position. *Safeco* makes it unnecessary to step into that quagmire.

Second, there is nothing in the lead opinion that is inconsistent with *Teitelbaum Furs.* As explained in part C, the evidence about Paster's felony conviction is undisputed and indisputable. My analysis has nothing to do with admissions or collateral estoppel.

**ORTEGA, Acting P. J.,** Concurring.— █ I agree with everything in the lead opinion except part A. There, the opinion points out that at the time the matter was in the trial court, there was no real distinction between an intentional act and a criminal act and that so viewed, "the summary judgment probably could not stand. [Citing *Teitelbaum Furs, Inc. v. Dominion Ins. Co. Ltd.* (1962) 58 Cal.2d 601 [25 Cal.Rptr. 559, 375 P.2d 439.]" I think the summary judgment granted 20th Century must stand, either under the current post-*Safeco* environment or as the matter previously presented itself in the trial court. I agree that *Teitelbaum* "is alive and well." I just do not think it is of any assistance to Schurtz. Irrespective of how Paster was convicted, Schurtz adamantly proclaimed throughout that Paster had deliberately tried to kill him. He did so in letters to the Probation Department and the trial court, in his deposition, and in a verified complaint. Only in a subsequent unverified amendment did he try to trump everything with his wholly inconsistent negligence claim.

Irrespective of *Teitelbaum,* which would preclude collateral estoppel based on Paster's plea, if we were considering this matter pre-*Safeco* I would

---

further briefing on several points, including the application of *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 22 [112 Cal.Rptr. 786, 520 P.2d 10] (an admission in response to a discovery response cannot be avoided by a contrary declaration submitted to defeat summary judgment) to our facts (so we could consider whether Paster's admissions at the time of her plea and Schurtz's verified allegations about Paster's intentional conduct could be avoided by their subsequent statements to the contrary). We also asked the parties to discuss judicial estoppel. These issues are addressed in the concurring opinions.

terminate Schurtz's case against 20th Century based on his own insistence throughout that Paster's assault was deliberate and intentional. I would not indulge Schurtz in his subsequent negligence ploy, plainly hatched for the purpose of gaining access to Paster's insurance policy. Nor do I see a triable issue of fact just because Paster has joined the scheme.

**MALLANO, J.,** Concurring.—Schurtz alleged in a verified complaint that Paster "pointed a loaded gun at his temple, threatened to kill him, then 'intentionally and willfully discharged [the] handgun . . . for the purpose of killing [him].' " (Lead opn., *ante*, at p. 1190.) At his deposition, Schurtz testified that Paster "gained entry to his house by breaking a window, that she woke him by hitting him on the head with her fist or the gun, held the gun at his head, and said it wasn't a joke. When he started to get up, she 'put the gun at [his] crotch,' told him not to move, put the gun back to his head and said, 'The bullet's in the chamber. You're dead.' He leaned forward and '[t]he gun fired.' " (*Id.,* at p. 1191.)

Thus, by his twice-sworn admission, Schurtz has established facts that fall squarely into the criminal act exclusion of Paster's policy. Based on the rationale of *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1 [112 Cal.Rptr. 786, 520 P.2d 10] (*D'Amico*), I conclude that the trial court properly granted 20th Century's summary judgment motion. As is stated in *D'Amico,* " 'When discovery, properly used, makes it "perfectly plain that there is no substantial issue to be tried" [citations], [summary judgment] is available for prompt disposition of the case.' [Citations.] [¶] Moreover, when discovery has produced an *admission* or concession on the part of the party opposing summary judgment which demonstrates that there is no factual issue to be tried, certain of those stern requirements applicable in a normal case are relaxed or altered in their operation. Thus, in *King* v. *Andersen* [(1966)] 242 Cal.App.2d 606 [51 Cal.Rptr. 561], the rule providing for liberal construction of counteraffidavits was held not to require reversal of a summary judgment for defendants where the plaintiff in an assault case, although having stated in his counteraffidavit that unnecessary force was used, nevertheless had stated in a previous deposition that no force was used; refusing to find that a triable issue was thus presented, the court said: 'Where, as here, however, there is a clear and unequivocal *admission* by the plaintiff, himself, in his deposition . . . we are forced to conclude there is no *substantial* evidence of the existence of a triable issue of fact.' " (*D'Amico, supra,* 11 Cal.3d at p. 21, fn. omitted, some italics added.)

If *D'Amico* prevents Schurtz from avoiding the force of his admissions in his verified complaint and deposition testimony—that he was injured during a criminal act committed by Paster—by offering his own sworn statement to

the contrary, it also follows that he cannot do so on the basis of Paster's sworn statement denying criminal culpability.

I am concerned about the rationale of the lead opinion, which states, as I understand it, that Paster's admission of her criminal conviction in and of itself triggers her policy's criminal act exclusion. I can foresee other situations where an insured pleads guilty to a crime to obtain the benefit of a plea bargain, yet the "victim" of the "crime" takes the position that there was no crime and claims that there is coverage under the insured's policy, notwithstanding a criminal act exclusion. Why should the insured be allowed to make a binding determination by pleading guilty that there was a criminal act for the purposes of policy coverage? I do not wish to foreclose what under present law might be a viable action against an insurer by a party claiming to be injured by an insured in a situation where it is disputed whether a criminal act caused the injury.

Finally, it seems that the lead opinion contradicts *Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601 [25 Cal.Rptr. 559, 375 P.2d 439]. Under that case, Paster's plea of nolo contendere may be used as an admission, but not for the purposes of collateral estoppel. Yet, if Paster's admission of a criminal conviction conclusively establishes a criminal act for the purposes of her policy's criminal act exclusion, it would appear that her plea is being used for more than just an admission.

A petition for a rehearing was denied November 2, 2001, and appellant's petition for review by the Supreme Court was denied January 23, 2002.