STATE FARM FIRE & CASUALTY COMPANY, Plaintiff,

v.

Ildefonso P. GOROSPE, Jr., Individually and as Special Administrator of the Estate of Ildefonso P. Gorospe, Sr., Deceased, and Marissa Baligad, Defendants.

No. 99–00550 SOM.

United States District Court, D. Hawai'i.

July 11, 2000.

Michael N. Tanoue, The Pacific Law Group, Honolulu, HI, for Plaintiff.

Guy Sibilla, Sibilla & Wildman, Honolulu, HI, for Defendant.

*AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

MOLLWAY, District Judge.

Plaintiff State Farm Fire & Casualty Company ("State Farm") has filed this declaratory judgment action to determine whether it has a duty to indemnify under a homeowner's insurance policy ("Policy") it issued to Buena Ventura Argel ("Argel"). Argel has been convicted of manslaughter in the shooting death of Ildefonso P. Gorospe, Sr. ("Gorospe").

Ildefonso P. Gorospe, Jr., individually and as special administrator of Gorospe's estate, and Marissa Baligad (collectively "Defendants") sued Argel in state court, asserting claims arising from Gorospe's death. That state action was dismissed by agreement of the parties, and State Farm filed this coverage action as provided in that agreement.

Both State Farm and Defendants have moved for summary judgment on the issue of whether State Farm has a duty to indemnify Argel under the Policy.[1] Because Argel's shooting of Gorospe was "expected or intended" and not an "accident" as defined by the Policy, there is no coverage under the Policy and summary judgment is granted as to State Farm and denied as to Defendants.

## BACKGROUND

The facts in this case are not in dispute. On June 9, 1996, Argel shot and killed Gorospe. During a dispute between Argel and Gorospe, Argel shot Gorospe six times in the head and body. On September 23, 1998, Argel pled no contest to the charge of manslaughter under Haw.Rev.Stat. § 707–702(1)(a).[2]

On February 6, 1998, Defendants filed a tort action in state court against Argel and various Doe Defendants, claiming damages relating to Gorospe's death. That action, *Gorospe, et al. v. Argel, et al.*, Civil No. 96–4372–10, filed in the Circuit Court of the First Circuit of the State of Hawaii ("State Action"), was dismissed under an agreement dated April 20, 1999. As part of the agreement, State Farm filed this declaratory relief action.

At the time relevant to the State Action Complaint, Argel was insured under a homeowner's policy (Policy Form FP–7923) issued by State Farm ("Policy").[3] The Policy covered Argel for liability for "damages because of bodily injury or property damage." Section II of the Policy, titled "Liability Coverages," states:

COVERAGE L—PERSONAL LIABILITY

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the occurrence, equals our limit of liability.

Coverage, however, is limited to "bodily injury or property damage ... caused by an occurrence." An "occurrence" is defined as "an accident, including exposure

---

1. Defendants' motion concerned policy exclusions. State Farm moved on the issue of whether the circumstances in issue amounted to a covered "occurrence," and alternatively on the issue of the policy exclusions. Defendants filed their opposition to State Farm's motion on the eve of the hearing, in clear violation of court deadlines. Violations of court rules may result in the imposition of sanctions. While State Farm did not object on the record to the late filing, the parties, even assuming they had an agreement (which is not evident here), can hardly decide between themselves to deprive the court of time to consider briefs.

2. Section 707–702(1)(a) states: "A person commits the offense of manslaughter if ...

[h]e recklessly causes the death of another person[.]"

3. Although there is no original signed copy of the Policy in the record, both parties have submitted copies of an identical form policy in connection with this motion. Because the parties do not dispute the terms of this Policy, the court treats the form as the Policy at issue.

According to State Farm, Policy Number # 51–08–25–25–3 was issued to Argel effective from July 18, 1995, until July 18, 1996, with a personal liability limit of $300,000 per occurrence.

to conditions which results in" "bodily injury" or "property damage." [4]

The Policy also contains an exclusion for "bodily injury" "expected or intended" and/or resulting from "willful and malicious acts." It states:

1. Coverage L and Coverage M do not apply to:

   a. bodily injury or property damage:

     (1) which is either expected or intended by an insured; or

     (2) to any person or property which is the result of willful and malicious acts of an insured[.]

Both State Farm and Defendants have moved for summary judgment on the issue of whether State Farm has a duty to indemnify Argel under the Policy.

## STANDARD

Summary judgment shall be granted when:

the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(c). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Summary judgment must be granted against a party who fails to demonstrate facts to establish what will be an essential element at trial. *Id.* at 322, 106 S.Ct. 2548. The burden initially lies with the moving party to identify for the court "the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec.*

*Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted)

In a coverage action, on a motion for summary judgment on the issue of duty to indemnify, an insurer is "not required to disprove any possibility that its insured might be liable for a claim asserted in the underlying lawsuits. Rather, without reference to what the eventual outcome of the underlying lawsuits might actually be, [an insurer is] required only to establish the absence of a genuine issue of material fact regarding the question of coverage pursuant to the plain language of the insurance policies and the consequent entitlement to the entry of judgment as a matter of law." *See also Dairy Road Partners v. Island Ins. Co., Ltd.,* 92 Hawai'i 398, 992 P.2d 93, 108 (2000).

## DISCUSSION

### I. *The Shootings Did Not Constitute an "Occurrence."*

■ An insurer has a duty to indemnify its insured only if liability is established for conduct that actually falls within the scope of the policy coverage. *See Dairy Road Partners v. Island Ins. Co., Ltd.,* 92 Hawai'i 398, 992 P.2d 93, 108 (2000); *Sentinel Ins. Co., Ltd. v. First Ins. Co. of Hawai'i, Ltd.,* 76 Hawai'i 277, 875 P.2d 894, 904 (1994) (noting that insurer would be subject to duty to indemnify insured only if, pursuant to plain language of insurance policy, insured could become "le-

---

4. Page two, paragraph seven of the Policy states:

"occurrence", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

   a. bodily injury; or
   b. property damage;

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence.

gally obligated to pay" damages under circumstances falling within sphere of policy's coverage).

■ General rules of contract construction apply to the interpretation of an insurance contract. *Dawes v. First Ins. Co. of Hawai'i, Ltd.*, 77 Hawai'i 117, 883 P.2d 38, 42, *recon. denied*, 77 Hawai'i 489, 889 P.2d 66 (1994). The policy must be read as a whole and construed in accordance with the plain meaning of its terms, unless it appears that a different meaning is intended. *Dawes*, 883 P.2d at 42; *First Ins. Co. of Hawaii, Inc. v. State*, 66 Haw. 413, 665 P.2d 648, 655 (1983). *See also* Haw.Rev. Stat. § 431:10-237 ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy"). Because insurance contracts are contracts of adhesion, they must be construed liberally in favor of the insured, and any ambiguities must be resolved against the insurer. *Foote v. Royal Ins. Co. of Am.*, 88 Hawai'i 122, 962 P.2d 1004, 1006 (App.1998) ("[p]ut another way, the rule is that policies are to be construed in accord with the reasonable expectations of a layperson").

■ The burden is on the insured to establish coverage under an insurance policy. *See Sentinel Ins. Co., Ltd. v. First Ins. Co. of Hawai'i, Ltd.*, 76 Hawai'i 277, 875 P.2d 894, 909 n. 13 (1994). The insurer has the burden of establishing the applicability of an exclusion. *See id.* at 914.

■ State Farm argues that there is no coverage for Argel's shooting of Gorospe because the Policy only covers claims made "against an insured for damages because of bodily injury or property damage . . . caused by an occurrence." The Policy

defines an "occurrence" as an "accident" that causes bodily injury. According to State Farm, the shooting was not an "accident." This court agrees. The Policy's definition of "occurrence," read in light of Hawaii law on the subject, is clear and unambiguous. The undisputed facts of this case do not involve an "accident."

In *Hawaiian Ins. & Guaranty Co., Ltd. v. Blanco*, 72 Haw. 9, 804 P.2d 876, 881 (1990), *overruled on other grounds by Dairy Road Partners v. Island Ins. Co., Ltd.*, 92 Hawai'i 398, 992 P.2d 93 (2000),[5] the Hawaii Supreme Court found that an insurer had no duty to defend, and concomitantly no duty to indemnify, an insured who intentionally fired a rifle in a neighbor's direction to frighten him. Even though the insured had not intended to inflict any particular injury, the shooting was not accidental, and therefore the court found no occurrence under the homeowner's policy.

The insured in *Blanco* was standing in the yard of his home when he repeatedly shot a rifle at a neighbor. *Id.* at 877–88. According to a statement made by the insured immediately after the shooting, the insured saw the neighbor "throwing rocks at his chickens." *Id.* at 880. When the neighbor ran into his house, the insured thought that the neighbor "was going inside his house to get his gun. He then fired at [the neighbor] a couple of times." *Id.* The neighbor's wife witnessed the shooting.

At the time of the shooting, the insured had a homeowner's policy that provided coverage "for damages because of bodily injury or property damage caused by an occurrence." *Id.* at 878. The policy defined "occurrence" as an "accident" and

5. The Hawaii Supreme court in *Dairy Road Partners* "overrule[d] *Brooks* and *Blanco* [only] to the limited extent that they imply that an insurer may rely upon extrinsic facts that may be subject to dispute in the underlying lawsuit as a basis for disclaiming its duty to defend where the complaint in the underlying lawsuit alleges facts within coverage." *Dairy Road Partners*, 992 P.2d at 117. The

court expressly stated that it did "not intend to call into question the ongoing viability of *Brooks* and *Blanco* in any other respect" beyond an insurer's basis for disclaiming its contractual duty to defend. *Id.* at 117 n. 2. The present case does not involve the duty to defend; it concerns only the duty to indemnify.

contained an exclusion for "bodily injury or property damage . . . which is expected or intended by the insured." *Id.*

The insured was indicted on a charge of second degree attempted murder and thereafter pled no contest to attempted assault in the first degree. *Id.*

The neighbor and his wife filed a tort action asserting intentional torts and negligence arising from injuries they received in the shooting. *Id.* After the insurer refused the insured's tender of defense, the insured responded, through his counsel, that "the insured did not intend to [shoot] [his neighbor] but shot away from [him] and there must have been a ricochet if [his neighbor] was hit at all." *Id.* at 879.

Subsequently, the insured and the neighbor entered into a stipulation in the tort action that stated:

> [The insured] failed to act with due care towards [his neighbor] by discharging his loaded rifle four (4) times from a distance of about 25 feet, and thus, did negligently injure and harm [his neighbor]. Each bullet struck objects located fifteen (15) feet from where [his neighbor] was standing. As a direct and proximate result of the several shots fired, one of the bullets struck an object which in turn struck [the insured's neighbor] in his right leg, causing bodily injury to [the neighbor] . . . . [The insured] did not intend to injure [his neighbor] but only wanted to scare him.

*Id.* at 879.

The insurer brought a declaratory action in Hawaii state court to clarify its duties under the policy. *Id.* at 878–79. The lower court granted summary judgment in favor of the insurer, finding no duty to defend.

The Hawaii Supreme Court affirmed, ruling that the insurer had no duty to defend because the shooting was not an accident. The court stated: "Given the best possible interpretation, [the insured] fired the rifle in [the neighbor's] direction intending to frighten him. That physical injury might result from such an action is certainly something which a reasonable man in [the insured's] position should have anticipated and expected." *Id.* at 881. The court further reasoned, "[The insured] could not reasonably expect to be covered or defended with respect to injuries to [the neighbor] which arose from his intentionally firing a rifle in [the neighbor's] direction to frighten him even though the particular injury was unexpected." *Id.*

As in *Blanco,* here it is undisputed that Argel shot Gorospe six times in the head and body. One of the bullet wounds occurred while Gorospe had his arm raised. A bullet wound to Gorospe's head was at such an extreme angle that the gun could only have been fired from a position above Gorospe. *See* Deposition of Kanthi De Alwis, attached as Exhibit 6 to Plaintiff's Motion for Summary Judgment.

Police officers reported that, on their arrival, Argel said, "The fucker tried to stab me with the knife, I shoot him with my gun." Similarly, while being taken to the police station, Argel reportedly kept saying, "I had to shoot him because he was threatening me."

From this evidence, this court can only conclude that Gorospe's death was not an "accident." As the Hawaii Supreme Court stated in *Blanco,* even given the best possible interpretation, i.e., that Argel shot at Gorospe intending only to frighten him, no coverage exists. "That physical injury might result from such an action is certainly something which a reasonable man in [Argel's] position should have anticipated and expected." *See Blanco* at 881. Because Argel "could not reasonably expect to be covered or defended with respect to injuries to [Gorospe] which arose from his intentionally firing [of] a rifle in [Gorospe's] direction," the court finds that "there was no accident and therefore no occurrence and, hence, no duty to [indemnify]." *See id.; see also Hawaiian Ins. & Guaranty Co., Ltd. v. Brooks,* 67 Haw. 285, 686 P.2d 23 (1984) (finding that insurer under a motor vehicle insurance policy had

no duty to defend driver who was aware that a third party was raping a woman in his truck because the expected result of the omission was the injury thus the injury was not caused by an accident), *overruled on other grounds by Dairy Road Partners v. Island Ins. Co., Ltd.,* 92 Hawai'i 398, 992 P.2d 93 (2000).

■ Defendants argue that, under Hawaii law, "a gunshot injury may fall within the definition of 'accidental harm.'" In support of their argument, Defendants' cite *Ganiron v. Hawaii Ins. Guar. Ass'n,* 69 Haw. 432, 744 P.2d 1210, 1212 (1987).[6] *Ganiron* involved an insured driver of a motor vehicle who was shot by the operator of another motor vehicle, while both drivers were on the H–1 freeway in Honolulu. The person firing the gun was never identified or found. *Id.* at 1210. The Hawaii Supreme Court found that the insured driver was entitled to insurance benefits under his own policy because, from the standpoint of the unknown gunner, "plaintiff's injuries were the result of either reckless or intentional conduct, but from the plaintiff's standpoint, they were accidental." *State Farm Mut. Auto. Ins. Co. v. Pichay,* 834 F.Supp. 329, 333 (D.Haw. 1993). *Ganiron* is distinguishable from the present case in that the insured in *Ganiron* was also the victim. As the Hawaii Supreme Court has repeatedly said, the determination of whether an accident has occurred is made from the insured's perspective. *See A.I.G. Hawaii Ins. Co. v. Estate of Caraang,* 74 Haw. 620, 851 P.2d 321, 328–32 (1993) (citing *Blanco,* 804 P.2d at 880, and *Brooks,* 686 P.2d at 27–28). Here, Gorospe was not an insured under the Policy. Because the shooting was no accident from Argel's viewpoint or perspective, there is no coverage under the Policy. *See Pichay,* 834 F.Supp. at 333.

II. *The "Intentional Act" Exclusion Applies.*

Even if the shootings could be considered an "accident," and thus a covered occurrence under the Policy, State Farm has no duty to indemnify given the exclusion for intentional acts.

The Policy contains an exclusion for "bodily injury" "expected or intended" and/or resulting from "willful and malicious acts." It states:

1. Coverage L and Coverage M do not apply to:

    a. bodily injury or property damage:

        (1) which is either expected or intended by an insured; or

        (2) to any person or property which is the result of willful and malicious acts of an insured[.]

As discussed above, given the circumstances surrounding Argel's shooting of Gorospe, no trier of fact could conclude anything but that the injuries to Gorospe were, at the very least, expected.

■ Defendants argue that the Policy's exclusion for intentional acts does not apply because Argel can only be said to have killed Gorospe "recklessly," not "intentionally." According to Defendants, Argel's plea of no contest to manslaughter precludes State Farm from arguing that Argel's acts were expected or intentional. The court disagrees.

In *Blanco,* the Hawaii Supreme Court found that an insured's plea of no contest to attempted assault in the first degree, a willful and/or intentional crime, was relevant to but not dispositive of the issue of whether an insurer had a duty to defend under a homeowner's policy that contained an exclusion for intentional acts. The court noted that "a plea of no contest, by the weight of authority, cannot be used against the person making it as an admission in any civil suit for the same act." *Id.* at 880. The fact of conviction "would be evidence, although not conclusive evidence of [the] commission of the crime in ques-

---

**6.** Defendants also cite state court cases from outside of Hawaii. The court is unpersuaded

by these cases, as the Hawaii Supreme Court has spoken clearly on this issue.

**1034**

tion in a civil action." *Id.* (citing *Asato v. Furtado,* 52 Haw. 284, 474 P.2d 288 (1970)).

Here, Argel was originally charged with the crime of murder in the second degree. Argel later pled no contest to manslaughter. A no contest plea is different from a guilty plea in that the defendant does not admit guilt. Despite the defendant's refusal to admit guilt, a judge accepts the plea because the attendant circumstances and evidence demonstrate with reasonable certainty that the defendant committed the crime to which he is pleading. Defendants in criminal cases often plead guilty to lesser charges to avoid the risks associated with trial. By the same token, prosecutors are willing to accept pleas to lesser charges to avoid the difficulty, risk, and expense of trial. That Argel pled guilty to the lesser crime of manslaughter does not mean that State Farm is precluded from arguing that Argel expected to inflict Gorospe's injuries. The court is unpersuaded that Argel's no contest plea renders the "intentional act" exclusion inapplicable.

The undisputed evidence in this case demonstrates that Argel's shooting of Gorospe resulted in injuries that were, at the very least, "expected." Coverage for expected injuries is clearly excluded under the Policy.

### CONCLUSION

For the reasons stated above, the court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendants' Motion for Summary Judgment. The clerk of the court is directed to enter judgment in State Farm's favor and to close the case.

IT IS SO ORDERED.