**ALLSTATE INSURANCE COMPANY,**
Plaintiff,

v.

**Paul S. TAKEDA, and Danny LoWrey, Defendants.**

**Civil No. 01–00729 SOM/KSC.**

United States District Court,
D. Hawai'i.

Jan. 14, 2003.

Richard B. Miller, Mark K. Morita, Tom, Petrus & Miller LLLC, Honolulu, HI, for plaintiff.

Norman K Lau, Steven T. Barta, Melvin Y. Agena, Honolulu, HI, for defendant.

*ORDER GRANTING IN PART AND DENYING IN PART ALLSTATE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT*

MOLLWAY, District Judge.

## I. INTRODUCTION.

Plaintiff Allstate Insurance Company ("Allstate") brings this declaratory action to determine whether, pursuant to a homeowner's insurance policy, it must defend and indemnify Paul S. Takeda ("Takeda") in a tort action. To the extent that Allstate claims that Takeda's acts were not an occurrence or that coverage is precluded by the intentional and/or criminal acts exclusions to the policy, the court finds that there is a genuine issue of material fact as to whether Takeda acted in selfdefense, precluding summary judgment on those issues at this time. The court does, however, grant Allstate summary judgment on the issue of whether it must indemnify Takeda for any punitive damages awarded in the underlying tort action.[1] Takeda's policy clearly does not provide coverage for punitive damages.

## II. BACKGROUND FACTS.

It is undisputed that, on or about September 4, 1999, Takeda struck Danny Lowrey ("Lowrey") in the head with a pole. Takeda subsequently pled no con-

1. At the hearing on Allstate's motion, Takeda conceded this point. In Takeda's Opposition, however, he posits that this court should stay this entire case pending the outcome of the underlying tort action. Because no motion to stay is presently before the court, this court makes no ruling as to the appropriateness of a stay. The court agrees that the present case should not be tried before the tort action is concluded, but it does not necessarily follow that proceedings in this case short of a trial should therefore be stayed.

test to assault in the first degree in violation of Haw.Rev.Stat. § 707–710, and a judgment of conviction was entered against him.[2] *See Amended Judgment, Guilty Conviction and Probation Sentence* in Crim. No. 00–1–1262 (Haw., First Cir., Aug. 7, 2001).

Lowrey sued Takeda in state court, alleging that Takeda had injured him with the pole. *See Lowrey v. Takeda, et al.,* Civil No. 00–1–3152–10 (Haw., First Cir., 2000). Lowrey alleged that Takeda was liable for assault and battery (Count I), outrageous conduct/intentional infliction of emotional distress (Count II), negligent infliction of emotional distress (Count III), and negligence (Count IV).

Takeda tendered the defense of that tort action to Allstate. *Id.* Allstate is providing Takeda with a defense under a reservation of rights.

The parties dispute the reason that Takeda hit Lowrey in the head with the pole. Lowrey alleged in his complaint that the altercation occurred between 10 and 11 p.m. at the Kuapa Kai Shopping Center in Hawaii Kai. Lowrey said that Takeda removed a "metal gaff" from the trunk of his car and "wildly swung" it. Complaint (Civil No. 00–1–3152–10) (Oct. 17, 2000) ¶ 18. Lowrey said this action forced him to retreat to an area behind Safeway, near an establishment called The Shack. *Id.* According to Lowrey, Takeda then took another swing with the metal gaff, striking Lowrey in the head. *Id.*

Takeda has a different account. He says that, on September 4, 1999, he met Linda Tengan ("Tengan") at The Shack in the Kuapa Kai Shopping Center. *See* Declaration of Paul S. Takeda (Dec. 18, 2002) ¶ 2. He says Tengan made a phone call in which she told the person on the other end

of the line where she and Takeda were. *Id.* ¶ 2. Takeda says that he and Tengan then left The Shack and walked to Safeway. As they were leaving Safeway, Takeda says, he "heard the burning of tires and an engine roaring." *Id.* ¶ 5. Takeda says he saw a "pickup truck speeding towards [them,] which hit [his] leg." *Id.* Takeda says that the driver of the pickup truck, who turned out to be Lowrey, had a "look in his eyes . . . like he wanted to kill [Takeda]." *Id.* ¶¶ 6, 12. Takeda says Tengan went over to the pickup truck and said something to Lowrey, who "revved his engine and burned more rubber." *Id.* § 7. According to Takeda, he had to jump out of the way to keep from being run over. *Id.*

Takeda says Lowrey then parked the truck, got out of it, and walked quickly towards Tengan and Takeda. *Id.* ¶ 8. Takeda says that Tengan then told him that Lowrey was her ex-boyfried and that Lowrey might have a gun. *Id.* ¶ 9. At that point, Takeda says, he opened his van, which was parked nearby, and removed a hollow fiberglass pole from it. *Id.* ¶ 10. Takeda describes himself as holding his cellular phone in one right hand and attempting to call 911, while waiving the pole at Lowrey with his other hand to hold Lowrey back. *Id.* ¶¶ 13, 14. Takeda says he saw Lowrey suddenly reach his right hand across his waist and under his jacket, in a move Takeda says he interpreted as Lowrey's attempt to pull out a gun. *Id.* ¶ 15. Takeda says he "swung the pole" in self-defense, as he feared for his life. *Id.* ¶¶ 15, 19, 21.

It is undisputed that, at all times relevant to this action, Takeda was insured under an "Allstate Deluxe Plus Homeowners Policy," Number 007–694–634.

---

**2.** Section 707–710 states: "A person commits the offense of assault in the first degree if the person intentionally or knowingly causes serious bodily injury to another person." Haw. Rev.Stat. § 707–710(1) (Michie 1999).

*See* Declaration of Jay Hoshino (August 29, 2002) ¶¶ 4–5. The Family Liability Protection portion of that policy provides:

> Subject to the terms, conditions, and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and covered by this part of the policy.

Policy, Coverage X at 28. "**Occurrence**" is defined in the policy as "an accident ... during the policy period, resulting in **bodily injury** or **property damage**." Policy at 4.

The Policy also states:

> **We** may investigate or settle any claim or suit for covered damages against an **insured person.** If an **insured person** is sued for these damages, **we** will provide a defense with counsel of our choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted our limit of liability.

Policy, Coverage X at 28. The policy, however, excludes coverage for "**bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**.... This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime." *Id.*

It is undisputed that the policy does not provide coverage for punitive damages.

## III. *SUMMARY JUDGMENT STANDARD.*

Summary judgment shall be granted when:

> the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130, 1134 (9th Cir.2000). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. *See id.* at 323, 106 S.Ct. 2548. A moving party without the ultimate burden of persuasion at trial—usually, but not always, the defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1102 (9th Cir.2000).

The burden initially lies with the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted). The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv.,* 809 F.2d at 630 (quotation omitted). At least some " 'significant probative evidence tending to support the complaint' " must be produced.

*Id. (quoting First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *Addisu,* 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact").

"[I]f the factual context makes the nonmoving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987) (*citing Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348), *cert. denied,* 484 U.S. 1006 (1988); *accord Addisu,* 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion"). However, when "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec. Serv.,* 809 F.2d at 631. All evidence and inferences must be construed in the light most favorable to the nonmoving party. *Id.* Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. *Id.*

## IV. ANALYSIS.

Allstate seeks a determination that it need not provide a defense in the tort action filed by Lowrey in state court or indemnify Takeda for any damages awarded in that action. Allstate says that Takeda's insurance policy does not cover damages arising from Takeda's striking of Lowrey because the event was not an occurrence and was either intentional or criminal. Allstate also argues that there is no coverage for punitive damages under Takeda's insurance policy.

Under Hawaii law, general rules of contract construction apply to the interpretation of insurance contracts. *Dawes v. First Ins. Co. of Haw.,* 77 Hawai'i 117, 121, 883 P.2d 38, 42, *recon. denied,* 77 Hawai'i 489, 889 P.2d 66 (1994). The insurance policy must be read as a whole and construed in accordance with the plain meaning of its terms, unless it appears that a different meaning is intended. *Id.* at 121, 883 P.2d 38, 883 P.2d at 42; *First Ins. Co. of Haw. v. State,* 66 Haw. 413, 423, 665 P.2d 648, 655 (Haw.1983); *see also* Haw. Rev.Stat. § 431:10–237 (Michie 2001) (in effect at the time of the incident) ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy."). Because insurance contracts are contracts of adhesion, they must be construed liberally in favor of the insured, and any ambiguities must be resolved against the insurer. Put another way, the rule is that insurance policies are construed in accordance with the reasonable expectations of a layperson. *Dawes,* 77 Hawai'i at 131, 883 P.2d at 42.

The burden is on the insured to establish coverage under an insurance policy. *See Sentinel Ins. Co. v. First Ins. Co. of Haw.,* 76 Hawai'i 277, 291 n. 13, 875 P.2d 894, 909 n. 13 (Haw.1994) (as amended on grant of reconsideration). The insurer has the burden of establishing the applicability of an exclusion. *See id.* at 297, 875 P.2d at 914.

The obligation to defend an insured is broader than the duty to pay claims. The duty to defend arises when there is any potential or possibility for coverage. *Id.* at 287, 875 P.2d at 904.

A. There is a A Question of Fact as to Whether Lowrey's Injuries Arose from an *Occurrence*.

■ Takeda's insurance policy obligates Allstate to pay damages arising from an "occurrence," defined in the policy as "an accident . . . resulting in bodily injury or property damage." Policy at 4, 28.

In *Hawaiian Ins. & Guaranty Co. v. Blanco*, 72 Haw. 9, 16, 804 P.2d 876, 880 (Haw.1990), *overruled on other grounds by Dairy Road Partners v. Island Ins. Co.*, 92 Hawai'i 398, 992 P.2d 93 (Haw.2000), the Hawaii Supreme Court discussed the meaning of the term "occurrence" in an insurance policy. The court said that, when examining whether there had been an "occurrence" for purposes of insurance coverage, it examined whether "the insured's expected result of the act or omission was the injury." *Id.* at 16, 804 P.2d 876. If yes, the injury was not caused by an accident and was not an "occurrence" for which insurance coverage was available.[3] *Id.; accord AIG Haw. Ins. Co. v. Caraang*, 74 Haw. 620, 636, 851 P.2d 321, 329 (1993).[4]

Interpreting the facts in the light most favorable to the insured, the court in *Blanco* assumed that, when the insured shot his neighbor, he intended only to frighten the neighbor. The court concluded that, under those circumstances, there had not been an accident. "That physical injury might result from such an action is certainly something which a reasonable man in [the insured's] position should have anticipated and expected." *Blanco*, 72 Haw. at 18, 804 P.2d at 881.

Relying on *Blanco*, Allstate argues that Takeda's act of striking Lowrey with the pole was not, as a matter of law, an accident. The record before this court, however, does not establish that Allstate is entitled to summary judgment. On this motion, this court must interpret the facts in the light most favorable to Takeda. The court therefore must assume that, as Takeda says in his declaration, he struck Lowrey with a hollow fiberglass pole in self-defense, thinking that Lowrey was reaching for a gun.

This case is distinguishable from *Blanco*, which involved a gunshot wound that was the expected injury when a gun was fired.[5] Here, if Takeda was indeed acting entirely to prevent what he thought was Lowrey's attempt to shoot him, the only injury Takeda could even arguably be said to have "anticipated" or "expected" was the injury necessary to avoid being shot himself. This raises the question of whether an act taken to save one's own life could reasonably be said to have involved anticipation or expectation at all.

**3.** The policy in *Blanco* similarly defined "occurrence" as an "accident" and contained an exclusion for "bodily injury or property damage . . . which is expected or intended by the insured." *Blanco*, 72 Haw. at 11–12, 804 P.2d at 878.

**4.** In *Caraang*, the Hawaii Supreme Court drew a distinction between a passenger who fired a gun from a moving vehicle and the driver who did not know that the passenger shot the gun. From the passenger's perspective, no accident occurred because he intentionally shot the gun. *Caraang*, 74 Haw. at 643, 851 P.2d at 332. However, from the driver's perspective, there was an accident,

because the driver had no idea that the shooting was about to occur. *Id.* at 636–37, 851 P.2d at 329.

**5.** For the same reason, *State Farm Fire & Cas. Co. v. Gorospe*, 106 F.Supp.2d 1028 (D.Haw. 2000), is distinguishable. *Gorospe* also involved damages caused by a gun. In *Gorospe*, a person was killed when he was shot six times in the head and the body. *Id.* at 1029, 1032. Under those circumstances, the court concluded that there was no "accident" and that the insured could not reasonably expect to be covered or defended under his insurance policy. *Id.* at 1032.

A layperson reading the definition of "occurrence" would have no reason to think that an act of self-defense was necessarily excluded from that definition. Nothing in the policy suggests that an act of self-defense committed by an insured instinctively or out of necessity would fall outside the definition of an "occurrence."

Clearly, Lowrey is asserting that Takeda's actions were unjustified in whole or in part. If Takeda did not act entirely in self-defense, his action may well fall outside of an "occurrence." At this point, however, the court, construing the facts in favor of Takeda, concludes that a question of fact as to whether there was an "occurrence" or an "accident" precludes summary judgment on this issue.

### B. Allstate Has Not Demonstrated that the *Intentional Acts Exclusion Bars Coverage*.

Takeda's policy with Allstate excludes coverage for **"bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional *or* criminal acts or omissions" of Takeda.[6] *See* Policy, Coverage X at 28 (emphasis to the "or" added). Takeda pled no contest to the charge of assault in the first degree. Allstate argues that the intentional acts exclusion is triggered because Takeda intended to strike Lowrey with the pole. Takeda, on the other hand, claims that he cannot be said to have intended an injury, as he was only acting in self-defense. Giving Takeda the benefit of all inferences on this motion and assuming Takeda was acting only in self-defense, the court agrees that the intentional acts exclusion does not, on the present record, bar coverage.

Courts are split as to whether a person acting in self-defense triggers the intentional acts exclusion. Some courts apply a bright-line rule, holding that when an insured performs a deliberate act in self-defense, the fact that the insured is acting in self-defense "in no way negates the deliberate nature of the act." *Allstate Ins. Co. v. Bauer*, 96 Wash.App. 11, 977 P.2d 617 (1999); *accord Hewitt v. Allstate Ins. Co.*, 726 So.2d 1120, 1123 (La.Ct.App.1999) ("the intentional act exclusion is not subject to a 'self–defense' exception"); *Auto–Owners Ins. Co. v. Harrington*, 212 Mich. App. 682, 538 N.W.2d 106, 110 (1995) ("self-defense does not provide an exception to the intentional acts exclusion").

Other courts reason that, when a person acts in self-defense, even though the person may intend to injure his or her attacker, the person is acting to prevent injury to himself or herself. Accordingly, these courts hold that, when "a policy holder establishes [that] he or she properly acted in self–defense or in defense of another, the insurance company may not rely upon an intentional acts exclusion to deny coverage." *Farmers & Mechs. Mut. Ins. Co. of W. Va. v. Cook*, 210 W.Va. 394, 557 S.E.2d 801, 810 (2001); *accord Allstate Ins. Co. v. Novak*, 210 Neb. 184, 313 N.W.2d 636, 641 (1981) ("An injury resulting from an act committed by an insured in self-defense is not, as a matter of law, an expected or intended act within the meaning of a policy of insurance exempting bodily injuries or property damages which are either expected or intended from the standpoint of the

---

**6.** At the hearing, citing *Tradewind Ins. Co. v. Stout*, 85 Hawai'i 177, 938 P.2d 1196 (Ct.App. 1997), Allstate argued that, based on the findings of the state court judge in the criminal case, issue preclusion bars relitigation of whether Takeda's acts were in self-defense. Allstate says that the state court judge in the criminal case determined that Takeda did not

act in self-defense. The court does not have a sufficient record to determine whether issue preclusion applies in this case. Moreover, because this argument was raised for the first time at the hearing, Takeda was not given the opportunity to brief it. Accordingly, it would be unfair to Takeda for the court to decide this motion based on issue preclusion.

insured."). In *State Farm Fire & Cas. Co. v. Poomaihealani*, 667 F.Supp. 705, 708–709 (D.Haw.1987), Judge Alan C. Kay, interpreting Hawaii state law, agreed with the second group of courts that self-defense is an exception to an intentional acts exclusion in an insurance policy.

In *Poomaihealani*, the insured claimed that he slapped and pushed his neighbor in self-defense. *Id.* at 706. The court noted that "the justification for inferring intent is not necessarily applicable in cases of self-defense." [7] *Id.* at 708. The court reasoned that the rationale for the intentional injury exclusion—to prevent individuals from purchasing insurance as a shield for their anticipated intentional conduct—is inapplicable to cases of self-defense. *Id.* at 709. An insured acting in self-defense does so in *"reaction* to his [or her] attacker, and any injuries suffered by the attacker are not the result of the insured's misconduct." *Id.* at 708 (*quoting Preferred Mut. Ins. Co. v. Thompson*, 23 Ohio St.3d 78, 491 N.E.2d 688, 691 (1986)). Self-defense is neither anticipated nor wrongful from the standpoint of the insured. *Poomaihealani*, 667 F.Supp. at 709. "When faced with a harm-threatening situation, the decision to defend one's self is not a choice. It is an instinctive necessity." *Id.* at 708. "Self-defense negates criminal intent and public policy requires a similar answer in insurance law." *Id.* at 709 (citation omitted).

Allstate argues that *Poomaihealani* lacks precedential value because it was decided before *Blanco*. Allstate says that, under *Blanco*, Hawaii courts draw no distinction, for purposes of insurance coverage, between an intentional act done to harm someone and an intentional act like the one in *Blanco*, which was intended merely to frighten someone. This distinction, however, is irrelevant to *Poomaihealani'*s discussion of the self-defense exception to the intentional act exclusion. An act done with the intent of frightening someone is still an intentional act.[8] *Blanco* simply does not speak to the self-defense issue. *Blanco* does not contradict the conclusion in *Poomaihealani* that an insured who acts in self-defense is not committing an intentional act for purposes of an exclusion in an insurance policy.

Since *Poomaihealani*, Allstate has been on notice that at least one decision reads the intentional acts exclusion as not covering situations in which an insured acts in self-defense. Notwithstanding this notice, Allstate did not expressly address self-defense in the policy it issued to Takeda. At best, the intentional acts exclusion in Takeda's policy was ambiguous as to whether self-defense fell within the intentional acts exclusion. This ambiguity is construed against Allstate. *Dawes*, 77 Hawai'i at 131, 883 P.2d at 42. If Takeda acted in self-defense, the intentional acts exclusion is inapplicable. As long as there is a question of fact as to whether Takeda acted in self-defense, there is also a question of fact as to whether the intentional acts exclusion contained in Takeda's insurance policy applies.[9]

---

**7.** The policy in *Poomaihealani* exluded "bodily injury or property damage which is expected or intended by the insured." *Id.* at 706.

**8.** In *Blanco*, the insured's firing of the gun was intentional. Insureds who use guns to shoot others are generally not entitled to insurance coverage, as gunshots "are considered intentional acts intended or expected to cause bodily injury." *Hewitt*, 726 So.2d at 1122.

**9.** Takeda's plea of no contest and his subsequent conviction to the charge of assault in the first degree are evidence of his intent. *See Blanco*, 72 Haw. at 17, 804 P.2d at 880. That evidence is not conclusive, however, because, without more, that evidence does not negate Takeda's claim of self-defense. *See id.*

C. Allstate Has Not Demonstrated that the *Criminal Acts Exclusion Bars Coverage.*

 Takeda's insurance policy with Allstate also excludes criminal acts from coverage. Allstate says that Takeda committed a crime when he injured Lowrey. Allstate takes the position that Takeda's conviction for assault in the first degree is conclusive proof that Lowrey's injuries resulted from Takeda's criminal acts for purposes of the criminal acts exclusion in the policy. In support of this argument, Allstate cites *20th Century Ins. Co. v. Schurtz,* 92 Cal.App.4th 1188, 112 Cal. Rptr.2d 547 (2001), and *Hooper v. Allstate Ins. Co.,* 571 So.2d 1001 (Ala.1990). Neither case is persuasive.

In *Schurtz,* the insured shot someone. She pled no contest to a felony assault with a firearm charge. Because the insured's conviction could not be disputed, *Schurtz* held that the insured's acts were a crime for purposes of the criminal act exclusion to the insured's policy. *Schurtz,* 112 Cal.Rptr.2d at 553. The holding in *Schurtz* does not state the law applicable to the present case.

In *Blanco,* the Supreme Court of Hawaii noted that, in a subsequent civil action, a conviction resulting from a no contest plea is evidence of the commission of a crime, but not conclusive evidence.[10] *Blanco,* 72 Haw. at 17, 804 P.2d at 880. *Schurtz* is therefore contrary to Hawaii law as stated in *Blanco.* Takeda's conviction, like the conviction in *Schurtz,* is undisputed. Takeda was indeed convicted following his guilty plea. However, as noted above, Takeda claims he acted in self-defense when he struck Lowrey with the pole. Because "[s]elf-defense negates criminal intent," there is a question of fact as to whether Takeda actually committed the crime to which he pled no contest. It is therefore unclear whether the criminal acts exclusion applies in this case. *See Poomaihealani,* 667 F.Supp. at 709; *accord* Haw.Rev.Stat. § 703–304; *State v. Realina,* 1 Haw.App. 167, 171, 616 P.2d 229, 232 (Ct.App.1980) (noting that §§ 703–304(1) and (2) may be available as a defense to a criminal charge of terroristic threatening).

Allstate's reliance on *Hooper* is equally unpersuasive. Allstate argues that Takeda's selfdefense contention is irrelevant because it goes to Takeda's intent, which, under *Hooper,* is not relevant to the application of the criminal acts exclusion.

*Hooper* involved a plea of guilty to a charge of assault in the second degree. *Hooper,* 571 So.2d at 1002. The charges arose after Hooper and Maze, who had been drinking, discussed going hunting. When Hooper handed a shotgun to Maze, the shotgun accidentally went off. *Id.* Under Alabama law, an assault could have occurred in *Hooper* because Hooper "recklessly cause[d] serious physical injury to another person by means of a deadly weapon or a dangerous instrument." *See* Ala.Code § 13A–6–21(a)(3); *Rothchild v. State,* 558 So.2d 981, 987 (Ala.Crim.App. 1989) (stating that § 13A–6–21(a)(3) only requires recklessness, not intent). Accordingly, even though *Hooper* noted that the criminal acts exclusion may be applied without regard to an insured's intent, that case, unlike the present case, may not have involved a crime in which the insured's intent was at issue, as a deadly weapon was involved in that case.

---

**10.** A person may have reasons for pleading no contest. For example, Takeda may have wanted to avoid the uncertainty of a trial, especially as it appears that he was sentenced to five years of probation. *See* Amended Judgment in Criminal Case. And Takeda may have been concerned about the implications of a possible finding of guilt for purposes of civil litigation.

The crime that Allstate says Takeda committed, a violation of Haw.Rev.Stat. § 707–710, has intent as one of its elements. Because no violation of § 707–710 can occur without criminal intent, because self-defense negates criminal intent, and because there is a question of fact as to whether Takeda acted in selfdefense, Allstate is not, on the present record, entitled to summary judgment on its claim that the criminal acts exclusion bars coverage in the present case based on an act that violates § 707–710.[11]

D. *There is No Coverage for Punitive Damages.*

■ Under Hawaii law, "[c]overage under any policy of insurance issued in [Hawaii] shall not be construed to provide coverage for punitive or exemplary damages unless specifically included." Haw. Rev.Stat. § 431:10–240. There is no dispute that Takeda's policy does not specifically include coverage for punitive damages. Accordingly, partial summary judgment is granted in favor of Allstate. Allstate is not responsible for any punitive damages awarded to Lowrey in his tort action against Takeda.

V. *CONCLUSION.*

To the extent Allstate seeks a declaration that it is not responsible for any punitive damages awarded to Lowrey in his tort action against Takeda, Allstate is granted summary judgment. However, a question of fact as to whether Takeda was acting in self-defense when he struck Lowrey with a pole precludes summary judgment as to the remaining parts of Allstate's motion. Allstate's motion is denied

with respect to all matters other than the punitive damages issue.

IT IS SO ORDERED.

---

**11.** To the extent Allstate argued at the hearing that the criminal acts exclusion applies because Takeda's conduct would have violated lesser assault charges, that issue has not been briefed. Because Takeda was not given the opportunity to brief this issue, the court declines to rule on it at this time.