11 MOORE, J.
This appeal concerns an insurer’s obligation to defend and coverage under a homeowner’s insurance policy containing an exclusion for bodily injury or property damage which is either expected or intended by the insured, or which is the result of willful and malicious acts of the insured. The trial court granted summary judgment in the insurer’s favor in a situation involving a physical encounter between two neighbors, in which the insured claimed self-defense. For the following reasons, we reverse and remand.
FACTS
David Bamert, Sr. (Bamert) and Frederick Johnson (Johnson) were next-door neighbors in Monroe, Louisiana. On June 14, 2003, both Bamert and Johnson were entertaining guests at their respective homes. After one of Bamert’s children threw a rock across the fence between the two houses and hit one of Johnson’s guests, Johnson walked over to Bamert’s house to discuss the incident. At this point, the deposition testimony of Bamert and Johnson contains conflicting accounts of the occurrence. According to Johnson, as he (Johnson) walked down the sidewalk to Bamert’s house, he heard Bamert’s door open, and Bamert indicated to him that he was aware that his daughter had been throwing rocks. Johnson told Bamert that the rock-throwing problem had been ongoing and that Johnson wanted Bamert to make it stop. Bamert then allegedly cursed Johnson, walked up to Johnson and pushed him in the chest with both hands. After Johnson allegedly asked Bamert what was the problem, Bamert allegedly cursed Johnson again and pushed him in the chest again. According to Johnson, | ¡.after the second push Johnson was scared and immediately hit Bamert “on the side of his face.” Johnson then “backed up real quick” and walked back to his house. As Johnson was walking up his driveway, he saw Bamert “holding his face, kind of leaning up against the car.”
On the other hand, Bamert testified in his deposition that just before the incident with Johnson, one of Bamert’s guests informed him that Bamert’s daughter had thrown a rock over the fence. Bamert allegedly then went out and met Johnson “pretty much at my door.” He apologized to Johnson about the rock and told Johnson he was “going to take care of it.” According to Bamert, Johnson then “started going off about ever since they moved in they’ve had nothing but problems with us.” Bamert allegedly told Johnson he had no idea what Johnson was talking about, the two “got into a verbal exchange” that included “probably some curse words,” and Bamert “felt very threatened.” Under Bamert’s version of the facts, Bamert put his hands on Johnson’s chest “to push him outside to get him out of the garage.” Bamert then allegedly turned around, looked at his wife, and told her to call the police; when he turned back toward Johnson, Johnson allegedly hit him and then ran home.
Bamert indicated that the blow bent the arm of Bamert’s glasses, gave him a black eye, and caused him to have a “floater” in his eye that interfered with his reading. Bamert indicated that after the altercation, which occurred on a Saturday, he went to see his doctor the following Tuesday, and his doctor told Bamert to have an ophthalmologist look at his eye. Bamert then made a Wednesday morning appointment with Dr. Robert Pierce, Jr., and [ 3missed a few hours of work for the two doctor’s appointments.
*707 Dr. Pierce’s deposition indicated that Bamert had been referred to him by Dr. Calhoun to make sure that Bamert’s eye was okay. Dr. Pierce indicated that there was no bruising around the eye, and he did not know whether the eye had been blackened; he further indicated that an eye usually would not heal within six days. Dr. Pierce found “some mild inflammatory response,” as well as “two very small superficial retinal hemorrhages in the back of the eye” that indicated there had been some trauma. On the other hand, Dr. Pierce stated that “floaters” were a common occurrence and could not necessarily be said to be caused by trauma, although trauma could cause them. Dr. Pierce also indicated that when Mr. Bamert came for his follow-up visit, the inflamation (iritis) had “nicely resolved.” Later in his deposition, Dr. Pierce admitted that the fact Mr. Bamert had no bruising when he first saw him did not mean that Mr. Bamért was not bruised; instead, Bamert could have simply healed rather quickly.
Bamert filed suit against Johnson in October 2003, and alleged that Johnson “suddenly and without warning” struck Bamert in the face, causing him “serious personal injuries.” As a result, Bamert sought damages for pain, suffering and disability, mental anguish and distress, medical expenses, and lost wages and/or earning capacity. Johnson then filed a general denial answer in which he asserted that the incident occurred solely because of the “belligerent and aggressive manner” of Bamert, and that any actions taken by Johnson were taken in self-defense. Johnson also pled comparative negligence.
|4In January 2004, State Farm Fire & Casualty Co. (State Farm) filed a petition for intervention, alleging that at the time of the incident Johnson was insured by State Farm under a homeowner’s policy, and that the policy contained an exclusion for “intentional, willful and malicious acts.” Noting that Bamert’s petition alleged that Johnson struck Bamert in the face with his fist, and that he allegedly did so negligently, suddenly, and without warning, State Farm asserted that it .was entitled to a declaratory judgment denying coverage and denying a defense to Johnson. State Farm filed a motion for summary judgment in November 2004, seeking a declaration that State Farm did not owe Johnson either a defense or coverage in the case. The motion for summary judgment came on for hearing in January 2005, and the trial court subsequently signed a judgment granting the relief sought by State Farm. This appeal followed.
DISCUSSION
Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, admissions on file and any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. The mover has the burden of establishing the absence of a genuine issue of material fact. If the movant will not bear the burden of proof at trial on the matter, the mover is required to point out to the court the absence of factual support for one or more elements essential to the adverse party’s claim or action. The non-moving party must then produce factual support sufficient to satisfy her evidentiary burden at trial. LSA-C.C.P. art. 966(C)(2). Appellate courts preview summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. NAB Natural Resources v. Willamette Industries, Inc., 28,555 (La.App. 2 Cir. 8/21/96), 679 So.2d 477.
An insurance policy is an agreement between the parties and should be *708 interpreted by using the general rules of contract interpretation set forth in the Louisiana Civil Code. Gleason v. State Farm Mutual Auto. Ins. Co., 21,221 (La.App. 2 Cir. 8/23/95), 660 So.2d 137. LSA-C.C. art. 2045 defines interpretation of a contract as the determination of the common intent of the parties. Such intent is to be determined in accordance with the plain and ordinary meaning of the language used in the policy, unless the words have acquired a technical meaning. Gleason, supra. Absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and impose reasonable conditions upon the obligations assumed in a given policy. Gleason, supra.
Generally, an insurer’s duty to defend lawsuits against its insured is broader than its liability for damage claims. The duty to defend is determined by the allegations of the plaintiffs petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. Yount v. Maisano, 627 So.2d 148 (La.1993); Matheny v. Ludwig, 32,288 (La.App. 2 Cir. 9/22/99), 742 So.2d 1029. Thus, assuming all the allegations of the petition to be true, if there would be both coverage under the policy and liability to the plaintiff, the insurer must defend the lawsuit regardless of its outcome. Yount, supra; Matheny, supra.
Inin the present case, the policy provides in pertinent part:
1. Coverage L (Personal Liability) and Coverage M (Medical Payments) do not apply to:
a. Bodily injury or property damage:
(I) Which is either expected or intended by the insured; or
(II) Which is the result of willful and malicious acts of the insured.
Viewing the conflicting deposition testimony herein in the light most favorable to Johnson, we will assume, for purposes of discussing the application of the exclusion, that Johnson acted in self-defense.
A review of the jurisprudence on the applicability of the exclusion to acts in self-defense shows that courts are split on the issue. See James Rigelhaupt, Jr., Annotation, Acts in Self-defense as within Provision of Liability Insurance Policy Expressly Excluding Coverage for Damage or Injury Intended or Expected by Insured, 34 A.L.R.4th 761; Allstate Insurance Company v. Takeda, 243 F.Supp.2d 1100 (D.Haw.2003).
In Takeda, supra, the trial court granted summary judgment in favor of Allstate, holding that a homeowner’s policy provided no coverage for Takeda, even though a factual dispute existed over whether Take-da was acting in self-defense when he struck someone in the head with a pole. In reversing the trial court and finding a genuine issue of material fact existed as to whether Takeda acted in self-defense, the court discussed the split in the jurisprudence as follows:
Courts are split as to whether a person acting in self-defense triggers the intentional acts exclusion. Some courts apply a bright-line rule, holding that when an insured performs a |7deliberate act in self-defense, the fact that the insured is acting in self-defense “in no way negates the deliberate nature of the act.” Allstate Ins. Co. v. Bauer, 96 Wash.App. 11, 977 P.2d 617 (1999); accord Hewitt v. Allstate Ins. Co., 726 So.2d 1120, 1123 (La.App. 4 Cir.1999) (“the intentional act exclusion is not subject to a ‘self-defense’ exception”); Auto-Owners Ins. Co. v. Harrington, 212 Mich.App. 682, 538 N.W.2d 106, 110 (1995) (“self-defense does not provide an exception to the intentional acts exclusion”).
*709 Other courts reason that, when a person acts in self-defense, even though the person may intend to injure his or her attacker, the person is acting to prevent injury to himself or herself. Accordingly, these courts hold that, when “a policy holder establishes [that] he or she properly acted in self-defense or in defense of another, the insurance company may not rely upon an intentional acts exclusion to deny coverage.” Farmers & Mechs. Mut. Ins. Co. of W. Va. v. Cook, 210 W.Va. 394, 557 S.E.2d 801, 810 (2001); accord Allstate Ins. Co. v. Novak, 210 Neb. 184, 313 N.W.2d 636, 641 (1981) (“An injury resulting from an act committed by an insured in self-defense is not, as a matter of law, an expected or intended act within the meaning of a policy of insurance exempting bodily injuries or property damages which are either expected or intended from the standpoint of the insured.”) In State Farm Fire & Cas. Co. v. Poomaihealani, 667 F.Supp. 705, 708-709 (D.Haw.1987), Judge Alan C. Kay, interpreting Hawaii state law, agreed with the second group of courts that self-defense is an exception to an intentional acts exclusion in an insurance policy.
In Poomaihealani, the insured claimed that he slapped and pushed his neighbor in self-defense. Id. at 706. The court noted that “the justification for inferring intent is not necessarily applicable in cases of self-defense.” [FN7] Id. at 708. The court reasoned that the rationale for the intentional injury exclusion — to prevent individuals from purchasing insurance as a shield for their anticipated intentional conduct — is inapplicable to cases of self-defense. Id. at 709. An insured acting in self-defense does so in “reaction to his [or her] attacker, and any injuries suffered by the attacker are not the result of the insured’s misconduct.” Id. at 708 (quoting Preferred Mut. Ins. Co. v. Thompson, 23 Ohio St.3d 78, 491 N.E.2d 688, 691 (1986)). Self-defense is neither anticipated nor wrongful from the standpoint of the insured. Poomaihealani, 667 F.Supp. at 709. “When faced with a harm-threatening situation, the decision to defend one’s self is not a choice. It is an instinctive necessity.” Id. at 708. “Self-defense negates criminal intent and public policy requires a similar |sanswer in insurance law.” Id. at 709 (citation omitted).
As noted above, in Hewitt v. Allstate Insurance Co., 1998-0221 (La.App. 4 Cir. 1/27/99), 726 So.2d 1120, the fourth circuit stated that Louisiana jurisprudence on this issue indicates that the intentional act exclusion is not subject to a self-defense exception. Similarly, in Prestenbach v. Badeaux, 03-809 (La.App. 5 Cir. 12/30/03), 865 So.2d 180, the fifth circuit concluded that self-defense does not provide an exception for an exclusion of bodily injury coverage either expected or unexpected when resulting from an intentional act. The court in Sperli v. Guiterrez, 00-1089 (La.App. 5 Cir. 10/18/00), 772 So.2d 805, 807 stated that, “This state’s jurisprudence provides that the intentional act exclusion applies when the insured acts intentionally in self-defense.” In a case somewhat factually analogous in that both parties seemed intent on violence, the first circuit in LaFever v. Whitely, 613 So.2d 1007 (La.App. 1 Cir.1992), writ denied, 614 So.2d 64 (La.1992) upheld a summary judgment in favor of State Farm, which had refused to defend its insured for damages he claimed resulted from acts in self-defense.
Neither the Louisiana Supreme Court nor this court has definitively ruled on this issue. On the other hand, our supreme court has stated in Breland v. Schilling, 550 So.2d 609 (La.1989), that the purpose of liability insurance is to afford the insured protection from damage claims; that *710 policies should be construed to effect, not deny, coverage; and that an exclusion from coverage should be narrowly construed. The Breland court also noted that the purpose of the intentional injury exclusion is to prevent an | insured from acting wrongfully with the security of knowing that his insurance company will “pay the piper” for the damages, and that the effect of the language in the exclusion is not always clear, but, “when construed in light of the myriad fact situations to which it has been applied, it is often ambiguous.”
We conclude that the trial court erred in granting summary judgment in this instance. First, as previously noted, an insurer’s duty to defend its insured is broader than its liability for damage claims. In this instance, although it appears that the policy exclusion for bodily injury that is “expected or intended by the insured” may apply, our law is unsettled with respect to its applicability to reasonable acts in self-defense. In this instance, there are different versions of the incident requiring credibility determinations before any ruling on whether Mr. Johnson’s act was privileged by virtue of acting in self-defense. Furthermore, on this record, the “willful and malicious acts of the insured” does not appear to be a ground for summary judgment.
CONCLUSION
For reasons set forth above, we conclude that the trial court erred in granting summary judgment in favor of State Farm. Accordingly, the judgment of the trial court is hereby reversed and the matter is remanded to the trial court for further proceedings. Costs are assessed to appel-lee.
REVERSED AND. REMANDED.